# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

ELLA POOL; CHRISTIAN McDUFFIE; and
FIREARMS POLICY COALITION, INC.,

        Plaintiffs,

   v.

COLONEL ROBERT P. HODGES, in his
official capacity as Superintendent of the
Louisiana State Police,

        Defendant.

Civil Action No.:

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.  TABLE OF AUTHORITIES...............................................................................ii-iii

II.  INTRODUCTION...........................................................................................1

III.  BACKGROUND .............................................................................................2

    A.  Statutory and Regulatory Background.........................................................2

    B.  Procedural History .....................................................................................4

IV.  LEGAL STANDARD.......................................................................................5

V.  ARGUMENT..................................................................................................5

    A.  The Second Amendment's Plain Text Covers Plaintiffs' Conduct...............7

    B.  Louisiana Cannot Show That Its Age Requirement Is Consistent
       With The Nation's Historical Tradition Of Firearms Regulation.................7

       1.  The Supreme Court Has Provided Extensive Direction
          Governing Lower Courts' Consideration Of The Government's
          Effort To Meet Its Burden ....................................................................7

          a.  Historical Evidence At And Around The Founding Controls ..........7

          b.  Establishing A Historical Tradition Requires Identifying
              A Widely Representative Regulatory Analogue .............................9

          c.  Purported Analogues Must Be Relevantly Similar........................10

    C.  There Is No Historical Tradition Of Regulation That Could Justify
       Louisiana's Age Requirement...................................................................11

VI.  CONCLUSION .............................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Christian v. James*, 176 F.4th 189, 207 (2d Cir. 2026) ........................................................8

*District of Columbia v. Heller*, 554 U.S. 570, 580, 581 (2008) .............................. 1, 5-6, 8

*Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) ...............................5

*Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020) ............................................ 8-9

*Heller v. District of Columbia*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) ........................8

*Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir. 2025) .......................... 2, 8, 11, 13

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ............................................................6

*Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012) .......................................................8

*Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1115 (11th Cir. 2025) .....................................8

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8 (2022) ........................... *passim*

*Ramos v. Louisiana*, 590 U.S. 83, 90–91 (2020) .................................................................9

*Reese v. BATFE*, 127 F.4th 583, 591 (5th Cir. 2025) ................................................. *passim*

*Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) ..........................5

*Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) ...............5

*Timbs v. Indiana*, 586 U.S. 146, 152 (2019) ......................................................................9

*United States v. Allam*, 677 F. Supp. 3d 545, 565–67 & nn30–31 (E.D. Tex. 2023) ...........3

*United States v. Allam*, 140 F.4th 289, 297 (5th Cir. 2025) ...............................................9

*United States v. Connelly*, 117 F.4th 269, 281 (5th Cir. 2024) ...................................... 8-9

*United States v. Daniels*, 124 F.4th 967, 972 (5th Cir. 2025) ............................................8

*United States v. Hemani*, 146 S. Ct. 1677, 1686 (2026) ............................................... 6-7

*United States v. Rahimi*, 602 U.S. 680, 691 (2024) ..................................................... 7-10

ii

*Virginia v. Moore*, 553 U.S. 164, 168 (2008) ................................................................9

*Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723, at *6 (U.S. June 25, 2026)... 6-7, 9, 11

*Worth v. Jacobson*, 108 F.4th 677, 695–98 (8th Cir. 2024) ................................. 1, 8, 11-12

## Constitutions, Statutes, and Rules

U.S. Constitution
    Second Amendment ................................................................................... *passim*
    Fourth Amendment .................................................................................................9
    Eighth Amendment .................................................................................................9
    Fourteenth Amendment ................................................................................1, 2, 6, 8

18 U.S.C.
    § 921(a)(26), 922(q)(2)(A), (B)(ii) ......................................................................2
    § 921(a)(27). ..........................................................................................................3
    § 922(q) ...................................................................................................................3
    § 922(q)(2)(A) ..................................................................................................... 1-2
    § 922(q)(2)(B)(i), (iii) ...........................................................................................4

La. R.S.
    § 9:2793.12(B) .......................................................................................................4
    § 14:95(M) .............................................................................................................2
    § 14:95.2(C)(9) ......................................................................................................2
    § 14:95.6(C)(1) ......................................................................................................3
    § 14:95.6(C)(2) ......................................................................................................3
    § 14:95.6(D) ...........................................................................................................3
    § 40:1379.3 .............................................................................................................2
    § 40:1379.3(C)(4) ..............................................................................................2, 13
    § 40:1379.3(M) ......................................................................................................2

Fed. R. Civ. P.
    56 .............................................................................................................................5
    56(a) ........................................................................................................................5
    56(b) ........................................................................................................................5

## Legislative Materials
Louisiana Senate Bill No. 1 ("SB 1") ................................................................. 1-2

## Other Authorities
Louisiana Department of Education enrollment data, *Multiple Statistics By Site For Total Public Students – February 1, 2026*, https://doe.louisiana.gov/docs/default-source/fiscal-data/feb-2026-multi-stats-(total-by-site-and-school-system)-web.xlsx?sfvrsn=a43aa9ee_5 ................................................................3

## INTRODUCTION

"[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8 (2022). This right presumptively "belongs to all Americans," not "an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580, 581 (2008); *see also Reese v. BATFE*, 127 F.4th 583, 591 (5th Cir. 2025). On their eighteenth birthday, the Plaintiffs became legal adults for almost all purposes and certainly for the purpose of exercising their other constitutionally protected rights. They can vote, enter contracts, and get married. They can join the military to fight and die for their country. And as adults, there are no parents or other legal guardians generally responsible for their care and protection. Yet the Louisiana laws challenged here prevent them from exercising their Second Amendment protected rights on par with all other adult Americans.

In 2024, Louisiana enacted Senate Bill No. 1 ("SB 1"), which ostensibly allows every person in Louisiana to lawfully carry a concealed weapon in public without obtaining a permit from state authorities. SB 1, however, does not deliver on its broad promise in light of the State's pre-existing regulatory framework for concealed carry. Specifically, 18-to-20-year-old adults such as Plaintiffs Ella Pool and Christian McDuffie need a concealed handgun permit in order to qualify for an exemption from the general prohibition on carrying a firearm within 1,000 feet of a school imposed through Louisiana's firearm-free zone law and the federal Gun Free School Zones Act. 18 U.S.C. § 922(q)(2)(A). Louisiana residents aged 21 and over qualify for these permits, but Louisiana's permitting regime still purports to forbid Louisiana's 18-to-20-year-olds from obtaining such licensure, thereby denying Plaintiffs their "general right to public carry" in Louisiana. *Bruen*, 597 U.S. at 33.

The Fifth Circuit has confirmed "that eighteen-to-twenty-year-olds were indeed part of 'the people' for Second Amendment purposes." *Reese*, 127 F.4th at 595. And there is no historical tradition that justifies treating such adults on discriminatory footing compared with adults over 21 years of age. *See Worth v. Jacobson*, 108 F.4th 677, 695–98 (8th Cir. 2024) (holding that

1

Minnesota's 21-year-old age limit for carry licenses violated the Second Amendment); *Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir. 2025), cert. denied, 2026 WL 1871315 (June 30, 2026) (striking down Pennsylvania law prohibiting 18-to-20-year-old adults from openly carrying firearms during a state of emergency); *accord Reese*, 127 F.4th at 595–600 (holding unconstitutional the federal ban on selling handguns to 18-to-20-year-old adults).

Louisiana's regulatory scheme prohibiting 18-to-20-year-old adults from obtaining concealed handgun permits violates the Second and Fourteenth Amendments. The Court should enter a judgment that declares Louisiana's age requirement unconstitutional and enjoins Defendant (and all those under Defendant's supervision) from enforcing it.

## BACKGROUND

### A.    Statutory and Regulatory Background.

In 2024, Louisiana enacted SB 1, which broadly authorizes individuals over the age of 18 to carry a concealed handgun in public without a permit throughout the State. SB 1 took effect July 4, 2024. Despite SB 1's embrace of a general right to carry absent a license, Louisiana residents may still apply for a concealed handgun permit issued by the State of Louisiana. *See* La. R.S. § 40:1379.3. Louisiana requires, however, that "[t]o qualify for a concealed handgun permit," an applicant must "[b]e twenty-one years of age or older." § 40:1379.3(C)(4).

Closing off the ability to obtain a concealed handgun permit has a real and practical effect on the constitutionally protected right to carry a firearm in public for self-defense. Louisiana law bars the carrying of concealed handguns in any "zone, or area in which firearms are banned by state or federal law." La. R.S. § 40:1379.3(M). Federal law bans possession of firearms within 1,000 feet of school grounds unless (among other exceptions) the individual possesses a concealed-carry license from the state in which the school is located. 18 U.S.C. §§ 921(a)(26), 922(q)(2)(A), (B)(ii). Louisiana has its own 1,000-foot radius rule, but generally excludes both permit-holders and persons "eighteen years of age or older … not prohibited from possessing a firearm under [state or federal prohibited persons laws]" who carry a concealed handgun. La. R.S. § 14:95.2(C)(9) (incorporating exception from La. R.S. § 14:95(M)). The net result is that

2

Louisiana's exclusion of 18-to-20-year-olds from eligibility for a concealed handgun permit effectively bars them from carrying within 1,000 feet of a school under both state and federal law.[1]

These 1,000-foot gun-free zones emanate from each and every school in the state,[2] making it impossible for those without carry permits to lawfully carry a firearm in the State to, through, and from any number of destinations. This prohibition includes merely passing through one of these zones. Based on publicly available data, there are more than 1,300 elementary and secondary schools in the State.[3] Importantly, these 1,000-foot gun-free zones are not marked or identified in any particular way, and encompass vast swaths of public and private property, including major and minor roads and thoroughfares throughout the state.[4] These zones, in and of themselves, are not and cannot be so-called "sensitive places." *Bruen*, 597 U.S. at 30–31 (cautioning against "expanding the category of 'sensitive places'" such that it "would eviscerate the general right to publicly carry arms for self-defense").

Moreover, many areas have many schools in close proximity to one another, creating overlapping gun-free zones such that 18-to-20-year-old adults effectively have no opportunity to carry handguns for their self-defense. The State requires localities to publish maps of "firearm-free zones" to provide guidance to the public. La. R.S. § 14:95.6(D).[5] To take two examples, the maps for New Orleans and Lafayette show how the State's "firearm-free zones" cover so much

---

[1] *Cf. United States v. Allam*, 677 F. Supp. 3d 545, 565–67 & nn30–31 (E.D. Tex. 2023) (explaining how state permitting decisions impact the ability to carry under 18 U.S.C. § 922(q)).

[2] "School" is defined in pertinent part as "a school which provides elementary or secondary education, as determined under State law." 18 U.S.C. § 921(a)(27).

[3] The Louisiana Department of Education publishes enrollment data twice each year. *See* https://www.louisianabelieves.com/resources/library/student-attributes [https://perma.cc/CPZ6-29MM]. The data from February 2026 lists 1336 schools. *Multiple Statistics By Site For Total Public Students – February 1, 2026*, [Sheet: Total by Site], La. Dep't of Educ., https://doe.louisiana.gov/docs/default-source/fiscal-data/feb-2026-multi-stats-(total-by-site-and-school-system)-web.xlsx?sfvrsn=a43aa9ee_5.

[4] Plaintiffs are not challenging the State's ban on firearm carry on School Campuses. *See* La. R.S. § 14:95.6(C)(2) ("'School campus' means all facilities and property within the boundary of the school property.").

[5] The State "firearm-free zones" are not coextensive with the federal ones under Section 922(q). Federal law only covers primary and secondary schools; Louisiana's "zones" include public vocational-technical schools, colleges, and universities. La. R.S. § 14:95.6(C)(1).

area that it is nearly impossible for an individual to comply with the law while carrying and traveling absent a Louisiana carry permit. *See* Ex A, Firearm-Free Zone Map of New Orleans; Ex B, Firearm-Free Zone Map of Lafayette.

Although the law exempts the possession of a firearm "on private property not part of school grounds," as well as an unloaded firearm stored in a locked container in a motor vehicle, 18 U.S.C. § 922(q)(2)(B)(i), (iii), the extensive coverage of its 1,000-foot school radius prohibitions impose a significant burden on Plaintiffs' ability to exercise their Second Amendment protected right to publicly carry a firearm.

Furthermore, 18-to-20-year-old adults like Plaintiffs are also deprived of other legal benefits that are granted to carry license holders. Under Louisiana law, carry license holders are immune from damages "caused by a justified use of force or self-defense through the discharge of the handgun." La. R.S. § 9:2793.12(B). Individuals 18-to-20-years-old carrying a handgun pursuant to the general right to constitutional carry do not get the benefit of such immunity.

## B.    Procedural History.

Plaintiffs Ella Pool and Christian McDuffie (collectively, the "Individual Plaintiffs") are law-abiding, responsible gun owners who are not prohibited under state or federal law from acquiring or possessing firearms or ammunition. Plaintiff Pool is under 21 years of age and lives in Lafayette, Louisiana. Plaintiff Christian McDuffie is under 21 years of age and lives in Youngsville, Louisiana. The Individual Plaintiffs want to apply for a concealed handgun permit issued by the State of Louisiana and would do so if Louisiana permitted them to. The Individual Plaintiffs, however, are each prohibited from applying for a Louisiana concealed handgun permit because they are under 21 years of age. The Individual Plaintiffs have refrained from carrying a firearm in public for self-defense in Louisiana because they are not permitted to obtain a Louisiana concealed handgun permit. Apart from the age requirement, the Individual Plaintiffs satisfy all criteria for a Louisiana concealed handgun permit. Pool Decl., ¶¶ 2–3; McDuffie Decl., ¶¶ 2–3. The Individual Plaintiffs are members of Plaintiff Firearms Policy Coalition, Inc. ("FPC"). Pool Decl., ¶ 4; McDuffie Decl., ¶ 4; Combs Decl., ¶ 5.

4

FPC is a nonprofit organization that seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. Combs Decl., ¶ 4. FPC brings this lawsuit on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public, including Plaintiffs Pool and McDuffie who are adversely and directly harmed by Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein. *Id.*, ¶ 5. But for Defendant's enforcement of the laws and regulations challenged herein, FPC's members who are between 18 and 20 years of age and who are legally eligible to possess and acquire firearms would be allowed to apply for a Louisiana concealed handgun permit. *Id.*

Plaintiffs filed this lawsuit on July 22, 2026, alleging that Louisiana's age requirement violates the Second Amendment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 "allows a party to move for summary judgment at any time, even as early as the commencement of the action." Fed. R. Civ. P. 56, advisory comm. notes (2009 Amendments); *see* Fed. R. Civ. P. 56(b). Summary judgment is proper where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "However the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (citation omitted). The movant may meet its burden by pointing out the absence of evidence supporting the nonmovant's case. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

## ARGUMENT

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. And it "elevates above all other interests"—including the Defendant's—"the right of law-abiding, responsible citizens to use arms in defense

5

of hearth and home." *Id.* at 635. The Second Amendment applies to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

To determine whether a firearm regulation is constitutional under *Bruen*, the analysis begins with whether the Second Amendment's plain text covers an individual's conduct; if so, the Constitution presumptively protects that conduct. *See Bruen*, 597 U.S. at 22–24. If that requirement is satisfied, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. In other words, it is Louisiana's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19 (cleaned up); *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain [the State's] statute. That is respondents' burden.").

When considering a government's proffered historical analogues, courts must first look at "the number of jurisdictions in which they were adopted" and "the extent to which they were well-accepted." *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723, at *6 (U.S. June 25, 2026). And because the Second Amendment analysis "seek[s] the general understanding of that codified right," it follows that "[a]n outlier legal rule adopted in a few locales is not enough." *Id.* at *11. A historical analogue must be "widespread, well-known, and widely accepted," *id.* at *14, but even then, it must also be sufficiently tailored to the modern conduct the government seeks to regulate: The analogue must be "relevantly similar" to a modern law based on "how" and "why" they restrict Second Amendment protected conduct. *Id.* at *6; *see Bruen*, 597 U.S. at 29. "The more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld. Conversely, the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review." *United States v. Hemani*, 146 S. Ct. 1677, 1686 (2026). *Hemani* provides a case in point. The Court found that "the government's analogy fails" because "the historical laws on which it relies targeted different kinds of people, did so for different reasons, and operated in different ways." 146 S. Ct. at 1694.

Louisiana is unable to meet its burden here.

6

**A.    The Second Amendment's Plain Text Covers Plaintiffs' Conduct.**

The first part of the *Bruen* analysis is straightforward. The Fifth Circuit has confirmed "that eighteen-to-twenty-year-olds were indeed part of 'the people' for Second Amendment purposes." *Reese*, 127 F.4th at 595. *Bruen* and *Wolford* have already established that the Second Amendment covers Plaintiffs' proposed conduct here—carrying arms publicly for self-defense and other lawful purposes. *Bruen*, 597 U.S. at 31–33; *Wolford*, 2026 WL 1825723, at *9. Therefore, the Second Amendment "presumptively protects" Plaintiffs' right to carry firearms in public in Louisiana. *Bruen*, 597 U.S. at 24; *see also Reese*, 127 F.4th at 595, 600. Stated another way, Louisiana's regime is "presumptively unconstitutional." *Wolford*, 2026 WL 1825723, at *6.

**B.    Louisiana Cannot Show That Its Age Requirement Is Consistent With The Nation's Historical Tradition Of Firearms Regulation.**

Under *Bruen*, the burden now shifts to Louisiana. It must show that its age requirement is "consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 34. "[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (quoting *Bruen*, 597 U.S. at 24). And it must do so by offering persuasive legal history. *See Bruen*, 597 U.S. at 25; *id.* at 25 n.6 (courts "decide a case based on the historical record compiled by the parties"); *Hemani*, 146 S. Ct. at 1687 (similar).

**1.    The Supreme Court Has Provided Extensive Direction Governing Lower Courts' Consideration Of The Government's Effort To Meet Its Burden.**

Under *Bruen* and *Rahimi*, three methodological considerations must guide Louisiana's presentation (and the Court's consideration) of the State's historical evidence.

**a.    Historical Evidence At And Around The Founding Controls.**

First, any proffered historical analogue must be from at or around the Founding, centering on 1791, when the Second Amendment was ratified. *See Bruen*, 597 U.S. at 34–35.

The meaning of the Second Amendment was fixed at the time it was adopted. The closer in time both before and after 1791 a historical law is, the more probative it is of that meaning. This

7

is because "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–35; *see also Bruen*, 597 U.S. at 37. Even if the text was later incorporated against the states through the Fourteenth Amendment, it is the 1791 understanding that is "applicable to [both] the Federal Government and States." *Reese*, 127 F.4th at 600.

As the Fifth Circuit has recognized, the Founding is thus "the crucial period of our nation's history" for defining the Second Amendment's scope. *Id.* at 599 (citation omitted). "*Bruen* cautioned that 'when it comes to interpreting the Constitution, not all history is created equal.'" *Id.* at 600 (quoting *Bruen*, 597 U.S. at 34); *accord Connelly*, 117 F.4th at 273–74, 281. Accordingly, "a law may unconstitutionally infringe on the right when it goes 'beyond what was done at the founding,' '[e]ven when [it] regulates arms-bearing for a permissible reason.'" *Reese*, 127 F.4th at 588 (quoting *Rahimi*, 602 U.S. at 692); *accord Connelly*, 117 F.4th at 274; *United States v. Daniels*, 124 F.4th 967, 972 (5th Cir. 2025).[6]

*Bruen* also stressed that courts "must … guard against giving postenactment history more weight than it can rightly bear." 597 U.S. at 35. So while it is *permissible* for courts to consider post-Founding-Era historical regulations, that review is limited to determining whether such regulations *confirm* a Founding Era tradition. *Id.* at 36–37. Put simply, "post-ratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Id.* at 36 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (emphasis in original), and citing *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020)). While "*Heller* and *Bruen* both

---

[6] The Fifth Circuit's approach accords with the prevailing view among the Circuits. *See, e.g., Lara*, 125 F.4th at 441 ("the constitutional right to keep and bear arms should be understood according to its public meaning in 1791"); *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012); *Worth v. Jacobson*, 108 F.4th 677, 692–93 (8th Cir. 2024); *Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1115 (11th Cir. 2025) (en banc); *accord Christian v. James*, 176 F.4th 189, 207 (2d Cir. 2026) (Menashi, J., concurring) ("The scope of the right to keep and bear arms is the same as against the federal and state governments. We therefore prioritize the understanding of the right that prevailed in 1791.").

8

considered 19th century sources in their analysis," they did so "to confirm and reinforce earlier historical evidence contemporaneous with the Constitution's ratification." *Reese*, 127 F.4th at 600.

*Bruen* thus reaffirmed the Court's practice of focusing on the Founding Era when analyzing other enumerated rights. *See, e.g., Espinoza*, 591 U.S. at 482 (finding unpersuasive "more than 30" provisions of state law from the "second half of the 19th Century" because they were not grounded in Founding-era practices regarding the Free Exercise Clause); *Ramos v. Louisiana*, 590 U.S. 83, 90–91 (2020) (discussing history of unanimous jury right by referencing "backdrop" of Bill of Rights' ratification in 1791); *Timbs v. Indiana*, 586 U.S. 146, 152 (2019) (discussing "colonial-era provisions" and "constitutions of eight States" when analyzing Eighth Amendment excessive fines clause); *Virginia v. Moore*, 553 U.S. 164, 168 (2008) ("[w]e look to the statutes and common law of the founding era to determine [Fourth Amendment] norms").

**b.      Establishing A Historical Tradition Requires Identifying A Widely Representative Regulatory Analogue.**

Second, *Bruen* held that forming a historical tradition requires proof of representative, relevantly similar analogues. As *Rahimi* explained, such historical laws must evidence the "principles that underpin our regulatory tradition" and that "underl[ie] the Second Amendment." 602 U.S. at 692. Analogues are representative, therefore, if they are broadly applicable and widely accepted. But a handful of state laws that are unconnected, in principle, to earlier or later enactments is not a "historical tradition" that informs the original public meaning of the right at the Founding. Thus, historical analogues must be "well-established and representative," not "outliers." *Bruen*, 597 U.S. at 30. "[S]poradic regulations, in only a few jurisdictions, likely are insufficient to substantiate a 'regulatory tradition.'" *United States v. Allam*, 140 F.4th 289, 297 (5th Cir. 2025). *Wolford* reaffirmed that historical analogues must be "widespread, well-known, and widely accepted," 2026 WL 1825723, at *14, and therefore "[a]n outlier legal rule adopted in a few locales is not enough," *id.* at *11. In *Bruen*, the Supreme Court rejected a set of three regulations as insufficient "to show a tradition of public-carry regulation." 597 U.S. at 46; *accord United States v. Connelly*, 117 F.4th 269, 281 (5th Cir. 2024) (observing that three post-

9

Reconstruction laws were "notably few"). Similarly, laws in the territories or discrete localized jurisdictions have limited utility in the analogical inquiry. *Bruen* explained that territorial laws are afforded "little weight" because they were "localized," "rarely subject to judicial scrutiny," and "short lived." *Bruen*, 597 U.S. at 67–69.

### c.    Purported Analogues Must Be Relevantly Similar.

Third, any analogues must be "relevantly similar" based on "how and why [they] burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. This means that the modern regulation must impose a "comparable burden on the right of armed self-defense" as the historical regulation, and for a similar reason. *Id.* Analyzing this relevant similarity yields, under *Rahimi*, the sort of "principles" that are applied to assess a modern enactment. 602 U.S. at 692. Accordingly, Founding-Era laws arising in different contexts, or for different reasons, are inapt comparators to a modern law since they are not motivated by the same underlying principles.

Consider the approach in *Rahimi*: when directing courts to consider "the principles that underpin our regulatory tradition," the Court offered direction on determining the right level of generality for extracting those principles. *Id.* On the one hand, courts need not identify a "dead ringer" or "historical twin" to the challenged law. *Id.* But on the other, "a court must be careful not to read a principle at such a high level of generality that it waters down the right." *Id.* at 740 (Barrett, J., concurring).

Thus, the *Rahimi* Court examined surety and going-armed laws and concluded that they stood for the principle that "[w]hen an individual poses a clear threat of physical violence to another" (justification), "the threatening individual may be disarmed" (burden). 602 U.S. at 698. The "principle," therefore, must satisfy both factors. Any purported principle that disregards the "how" or the "why"—or both—is taken at too high a level of generality. *See id.* at 692 (a law would be incompatible with the Second Amendment if it imposes a more severe burden, even if it shares a "permissible reason").

10

**C.      There Is No Historical Tradition Of Regulation That Could Justify Louisiana's Age Requirement.**

Louisiana cannot meet its burden of showing that the age requirement "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S., at 24. There is no well-established and representative historical tradition of restricting the ability to bear arms for law-abiding, responsible 18-to-20-year old adults. *See Reese*, 127 F.4th at 595–600 (concluding that restricting the Second Amendment rights of 18-to-20-year-old adults was inconsistent with the Nation's historical tradition of firearm regulation); *Worth*, 108 F.4th at 695–98 (same); *Lara*, 125 F.4th at 438–46 (same).

When reviewing the impact of the age requirement, the Court must bear in mind what it "means in practice," *Wolford*, 2026 WL 1825723, at *9, because of its intersection with Louisiana's firearm-free zones. Much like Hawaii's "default rule," which effectively prohibited carry "in many places that people routinely visit in the course of their daily routines," *id.* at *3, preventing 18-to-20-year-old adults from securing a carry permit severely burdens their ability to carry arms for self-defense because of the overlapping web of 1,000-foot buffers emanating from each school zone.

Turning to the historical record itself, the Fifth Circuit has already addressed the relevant history. In *Reese*, the court examined a range of historical laws from the Founding through the late-19th century and rejected each as not establishing "a historical tradition of firearm restrictions imposed on eighteen-to-twenty-year-old Americans." 127 F.4th at 595–600. From the Founding Era, the government had put forward (1) public university resolutions restricting firearm possession by students, (2) militia regulations requiring parents' consent for minors to enroll and parents to furnish firearms for young men's militia duty, and (3) a South Carolina treatise discussing how minors were ineligible to be constables. *Id.* at 596–99. None of these sufficed to form a representative historical tradition.

The university rules failed the "how" and "why" tests because they were an exercise of *in loco parentis* authority over all students, regardless of age, aimed at "effectuat[ing] student

11

discipline and academic rigor, not … disarm[ing] all minors." *Id.* at 596–97. They also applied only on school grounds—not on broad swaths of land surrounding those grounds, as is the issue here. *Id.* at 597. The militia laws were similarly inapposite. Laws governing service by minors, such as those requiring parents to furnish firearms for their sons, did "not mean that the military-aged men lacked the right to keep and bear (or obtain) such arms themselves [, but] just as readily impl[ied] that eighteen-to-twenty-year olds were *expected* to keep and bear arms, even if provided by parents." *Id.* And the constable-eligibility requirements "hardly qualifie[d] as 'relevantly similar'" to restrictions on firearms possession generally. *Id.* (citation omitted). In short, the government failed to establish a tradition of firearms restrictions on 18-to-20-year-olds at the Founding.

The Fifth Circuit then rejected a set of proffered Reconstruction-Era analogues that "limited the Second Amendment rights of eighteen-to-twenty-year-olds in some way," even though some appeared "relevantly similar." *Id.* at 599–600. The court explained that "[t]he limitation of these late 19th century analogues is not in the 'how' or the 'why' of regulation but rather that the laws were passed too late in time to outweigh the tradition" at the Founding. *Id.* at 599.

The Fifth Circuit's approach in *Reese* accords with the Eighth and Third Circuits' consideration of firearm regulations directed at 18-to-20-year-old adults. The Eighth Circuit held Minnesota's 21-year-old permit requirement unconstitutional, distinguishing militia laws and university rules on nearly identical grounds as *Reese. Worth*, 108 F.4th at 695–96. It also rejected Founding-Era municipal ordinances banning firearm discharge within cities as insufficiently analogous to carry regulations. *Id.* at 696. Turning to Reconstruction-Era sources, the court noted that they were likely entitled to little weight, but addressed them anyway. *Id.* Some laws prohibited only *concealed* carry or the types of weapons that could be easily concealed, and others criminalized only the *sale* of firearms to minors. *Id.* at 697. These burdens were too dissimilar to justify Minnesota's requirement that carry license applicants be at least 21 years old. *Id.* at 697–98.

12

In *Lara*, the Third Circuit rejected Pennsylvania's effort to rely primarily on Reconstruction-Era sources to justify its ban on 18-to-20-year-olds carrying firearms during declared emergencies. 125 F.4th at 431–32, 441–42. The court invoked *Bruen*'s warning "against giving postenactment history more weight than it can rightly bear." *Id.* at 441. Since those later laws stood in "irreconcilable conflict with the Founding-era laws" "reflect[ing] the principle that 18-to-20-year-olds [were] entitled to exercise the right to bear arms," the court concluded that the State's collection of "mid-to-late nineteenth century" regulations could not carry the day. *Id.* at 441–42. The only remaining authority—an eighteenth-century hunting regulation that did not single out 18-to-20-year-olds—fell "conspicuously short" of being analogous. *Id.* at 442–43.

In sum, no historical tradition justifies Louisiana's restriction on the Second Amendment protected rights of 18-to-20-year-old adults.

\*     \*     \*

Accordingly, prohibiting 18-to-20-year-old adults from obtaining a concealed handgun permit in La. R.S. § 40:1379.3(C)(4) violates the Second Amendment.

## CONCLUSION

For the reasons above, the Court should grant Plaintiffs' motion for summary judgment.

Dated:  July 22, 2026

Respectfully Submitted,

/s/ Bradley A. Benbrook
Bradley A. Benbrook\*
Stephen M. Duvernay\*
Jamie G. McWilliam\*
BENBROOK LAW GROUP, P.C.
701 University Avenue, Suite 106
Sacramento, California  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com
jamie@benbrooklawgroup.com

/s/ George J. Armbruster
George J. Armbruster III - #23432
ARMBRUSTER & ASSOCIATES, APLC
332 E. Farrel Rd,, Ste. D
Lafayette, LA  70508
Telephone: (337) 889-5511
george@arm-assoc.com

*Attorneys for Plaintiffs*

\*Application to appear *pro hac vice* forthcoming

13