**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

ELLA POOL; CHRISTIAN McDUFFIE; CHARLES MATTHEWS; and FIREARMS POLICY COALITION, INC.,

Plaintiffs,

v.

COLONEL FRANK J. BESSON[1], in his official capacity as Superintendent of the Louisiana State Police,

Defendant.

Civil Action No.: 6:26-cv-02650-DCJ-DJA

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 11 MOTION**

[1] Defendant Colonel Frank J. Besson was substituted for Colonel Robert Hodges in accordance with Fed. R. Civ. P. 25(d).

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................4

I. December 2024 To September 2025: FPC And Nonresident Plaintiffs Bring *Mate* And The Fifth Circuit Decides The 18-To-20 Issue In *Reese* ......................................4

II. July 2026: Plaintiffs File The *Pool* Case; The Solicitor General Reports That People In His Office Are "Unhappy," But The State Needs 60 Days To "Assess" Its Position And May Not Even Oppose The Case ..........................................................................5

III. Mid-August 2026: The State Proposes To *Expand* The Litigation By Bringing The United States Into The Case ...........................................................................................8

IV. September 1, 2026: Plaintiffs File The Preliminary Injunction Motion And FPC Issues A Press Release ...........................................................................................................9

ARGUMENT ................................................................................................................9

I. The State's Claim Preclusion Theory Is Wrong .........................................................10

A. This Case Does Not Raise The "Same Claim" As *Mate* ...............................10

1. Challenges To Different Statutory Requirements Represent Different Claims.........................................................................................10

2. The State's Approach Would Lead To Absurd Results.......................14

B. The Parties In *Pool* Are Not Identical To Or In Privity With Those In *Mate* .15

II. The State's Sanctions Motion Is Improper ...............................................................18

A. Sanctions Are Permissible When A Legal Position Is Not "Plausible" or "Obviously Foreclosed," So When A Supreme Court Decision Supports Plaintiffs' Litigation Position, Sanctions Cannot Be Imposed ........................18

B. Even If The Court Deems Sanctions Warranted, Sanctions Must Be Limited To The "Least Severe" Option "Adequate" To Deter .....................................20

III. The Court Should Award Plaintiffs Their Expenses For Opposing The State's Motion........................................................................................................................22

CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

### Cases

*Adhikari v. Daoud & Partners*,
No. 4:09-cv-1237, 2017 WL 5904782 (S.D. Tex. Nov. 30, 2017) ........ 24

*Akin v. Q-L Investments, Inc.*,
959 F.2d 521 (5th Cir. 1992) ........ 20

*Banc One Cap. Partners Corp. v. Kneipper*,
67 F.3d 1187 (5th Cir. 1995) ........ 19

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Lab.*,
17 F.4th 604 (5th Cir. 2021) ........ 9

*CJC Holdings, Inc v. Wright & Lato, Inc.*,
989 F.2d 791 (5th Cir. 1993) ........ 20

*Currier v. Virginia*,
585 U.S. 493 (2018) ........ 15

*Devins v. Armstrong*,
167 F.4th 247 (5th Cir. 2026) ........ 13

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ........ 11

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,
857 F.2d 191 (3d Cir. 1988) ........ 21

*Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*,
690 F. Supp. 728 (N.D. Ill. 1988) ........ 22, 23

*FDIC v. Tekfen Constr. & Installation Co.*,
847 F.2d 440 (7th Cir. 1988) ........ 21

*Fermin v. Nat'l Home Life Assurance Co.*,
15 F.3d 180, 1194 WL 24922 (5th Cir. 1994) ........ 20

*Foy v. First Nat'l Bank of Elkhart*,
868 F.2d 251 (7th Cir. 1989) ........ 23

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987) ........ 23

*Garrett v. First Nat'l Bank & Tr. Co.,*
153 F.2d 289 (5th Cir. 1946) ........ 17

*Guzman v. Consumer Law Grp., P.A.*,
2012 WL 13005300 (S.D. Ga. 2012) ........ 24

*Harman v. City of Univ. Park*,
1997 WL 53120 (N.D. Tex. 1997) ........ 23

*Heisler v. Kean Miller, LLP*,
No. CV 21-724, 2021 WL 5919507 (E.D. La. Dec. 15, 2021) ........ 21

*Jenkins v. Methodist Hospitals of Dallas, Inc.*,
478 F.3d 255 (5th Cir. 2007) ........ 3, 22

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955)........ 16

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*,
590 U.S. 405 (2020)........ 12

*Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*,
649 F.3d 539 (7th Cir. 2011) ........ 18

*Merriman v. Security Ins. Co. of Hartford*,
100 F.3d 1187 (1996)........ 22

*Meza v. General Battery Corp.*,
908 F.2d 1262 (5th Cir. 1990) ........ 2, 16

*Moore v. Vital Prods., Inc.*,
2009 WL 275475 (N.D. Ill. Feb. 3, 2009) ........ 19

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018)........ 8

*OCA-Greater Houston v. Texas*,
867 F.3d 604 (5th Cir. 2017) ........ 16

*Oreck Direct, LLC v. Dyson, Inc.*,
560 F.3d 398 (5th Cir. 2009) ........ 13

*Paganucci v. City of New York*,
993 F.2d 310 (2d Cir. 1993) ........ 20

*Phi Theta Kappa Honor Soc'y v. HonorSociety.org, Inc.*,
2025 WL 1030240 (5th Cir. 2025) ........ 8

*Raburn v. Wiener, Weiss & Madison*,
2019 WL 6696420 (M.D. La. 2019)........ 22

*Range v. Att'y Gen.*,
124 F.4th 218 (3d Cir. 2024) ........ 14

*Reese v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
127 F.4th 583 (5th Cir. 2025) ........ 5

*Robinson v. Nat'l Cash Register Co.*,
808 F.2d 1119 (5th Cir. 1987) ........ 19

*Roor Int'l BV v. Stinky's Smoke Shop, LLC*,
No. 4:18-cv-735, 2021 WL 5514594 (E.D. Tex. Nov. 24, 2021)........ 24

*Rush v. McDonald's Corp.*,
966 F.2d 1104 (7th Cir. 1992) ........ 23

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
833 F.3d 512 (5th Cir. 2016) ........ passim

*Southern Leasing Partners, Ltd. v. McMullan*,
801 F.2d 783 (5th Cir. 1986) .......... 19, 20

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
37 F.4th 1078 (5th Cir. 2022) .......... 12, 13

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......... 1, 15, 16

*Texas Medical Ass'n v. U.S. Dep't Health & Hum. Servs.*,
2023 WL 4977746 (E.D. Tx. 2023) .......... 11

*Thomas v. Cap. Sec. Servs., Inc.*,
836 F.2d 866 (5th Cir. 1988) .......... 3, 21, 22

*United States v. Bost*,
No 24-1719 (3d Cir. Oct. 13, 2026) .......... 14

*United States v. Cockerham*,
162 F.4th 500 (5th Cir. 2025) .......... 14

*United States v. Cordova*,
No. 24-50564 (5th Cir. Sept. 14, 2026) .......... 14

*United States v. Hemani*,
608 U.S. 772 (2026) .......... 15

*Vanliner Ins. Co. v. DerMargosian*,
2014 WL 1632181 (N.D. Tex. 2014) .......... 4, 23, 25

*Welsh v. Fort Bend Indep. Sch. Dist.*,
860 F.3d 762 (5th Cir. 2017) .......... 17

*Whitehead v. Food Max of Miss., Inc.*,
332 F.3d 796 (5th Cir. 2003) .......... 21

*Whole Woman's Health v. Cole*,
790 F.3d 563 (5th Cir. 2015) .......... 10

*Whole Woman's Health v. Hellerstedt*,
579 U.S. 582 (2016) .......... passim

*Williams v. Att'y Gen.*,
No. 24-1091 (3d Cir. Oct. 13, 2026) .......... 14

*Wright v. ASI Lloyds*,
2026 WL 1611917 (S.D. Tex. 2026) .......... 24

**Statutes**

La. R.S. § 40:1379.3(C)(3) .......... 1, 4

La. R.S. § 40:1379.3(C)(4) .......... 1, 6

La. R.S. § 40.1379.3(C)(4)–(19) .......... 14

**Other Authorities**

Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.................................... 9, 21, 23

18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4454 (3d ed.)..................... 16

*18A Charles Alan Wright et al., Federal Practice and Procedure* § 4456 (3d ed.)......... 16, 17, 18

**Rules**

Fed. R. Civ. P. 11(b)........................................................................................................... 18

Fed. R. Civ. P. 11(c)(4)........................................................................................................ 3

## INTRODUCTION

Louisiana's motion for Rule 11 sanctions is abusive and should be denied for many reasons. Most important, to defeat the motion, Plaintiffs' arguments against the State's preclusion theory need only be "plausible" and not "obviously foreclosed." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528–29 (5th Cir. 2016). Here, Plaintiffs' arguments against the State's preclusion theory are plainly *correct*: As shown below, the State cannot possibly meet its burden of showing that the Plaintiffs' claims in the *Pool* case are claim-precluded by the judgment in the *Mate* case. As a result, the request for sanctions must be denied.

I. Louisiana has not shown, and cannot show, that "the same claim or cause of action was involved in both" the *Mate* and *Pool* cases. *Id.* at 521. Louisiana bears the burden here. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). The two cases did not involve the same claims because they involve different classes of regulated plaintiffs suing under *different statutes*, so the State cannot satisfy its burden of showing that the two cases arise out of a "common nucleus of operative facts." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 604–05 (2016).

*Mate* challenged Louisiana's statutory bar on issuing carry permits to *non-Louisiana-resident* adults under La. R.S. § 40:1379.3**(C)(3)**. The named plaintiffs in *Mate* were thus nonresident adults. As an association, FPC derived its standing to sue on behalf of them and other non-Louisiana adult members. The *Pool* case, on the other hand, involves a challenge to a separate law impacting a separate group of people: It challenges Louisiana's statutory bar on issuing carry permits to *Louisiana residents aged 18 to 20* under La. R.S. § 40:1379.3**(C)(4)**. As a result, the named plaintiffs in *Pool* are Louisiana residents in the 18-20 age range, and FPC derives its standing by suing on behalf of them and similarly situated members. There is no overlap between the application of the two laws or the two groups of plaintiffs in the two cases.

Never mind, says the State, it's all the same "permitting regime" and the two cases involve "adjoining clauses in the same statutory provision." Mot. 6. This is wrong. When one class of plaintiffs sues under a statute that applies to their class in one case, and a different class of plaintiffs sues under a different statute that applies to it (but not the first class), the "factual foundation" is

manifestly *not* "the same" in both cases. Mot. 7. The Supreme Court agrees. The State conspicuously fails to cite *Hellerstedt*, which destroys its claim preclusion theory on this very point:

> **This Court has never suggested that challenges to two different statutory provisions that serve two different functions must be brought in a single suit.** And lower courts normally treat challenges to distinct regulatory requirements as "separate claims," even when they are part of one overarching "[g]overnment regulatory schem[e]."

*Id.* at 604–05 (emphasis added). Under the governing standard, the State cannot establish the "same claim" requirement.

Indulging the State's theory would have profoundly negative impacts on public policy litigation in federal court. The Supreme Court emphasized this point in rejecting the Fifth Circuit's approach in *Hellerstedt* (which Louisiana parrots here):

> The opposite approach adopted by the [Fifth Circuit] would require treating every statutory enactment as a single transaction which a given party would only be able to challenge one time, in one lawsuit, in order to avoid the effects of claim preclusion. Such a rule would encourage a kitchen-sink approach to any litigation challenging the validity of statutes. That outcome is less than optimal—not only for litigants, but for courts.

*Id.* at 605. Louisiana's argument is even more radical, since the different statutes regulate different and non-overlapping constituencies; this novel rule would require organizations relying on associational standing to join every conceivable member constituency in the kitchen-sink proceeding, or else those members forever lose the right to challenge the separate statutes regulating them. Claim preclusion doctrine, which exists to promote judicial efficiency, cannot be contorted to promote that result.

While that alone is enough to defeat the State's preclusion argument, the State also cannot meet its burden of showing the parties in the two cases "are identical or in privity." *Snow Ingredients*, 833 F.3d at 521. The Individual Plaintiffs were not members of FPC during *Mate*, nor were they in privity with FPC, and so "cannot be bound by [the] judgment in [*Mate*] to which [they were] not a party." *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266, 1272 (5th Cir. 1990) (rejecting the argument that a union's prior suit bound an individual who was not a member at the

time of the first suit). As to FPC, the organization derives its standing from its members, and, as shown below, the State has not met its burden of showing that FPC could have even brought the claim asserted here in the prior case.

As a result, the State cannot meet its burden of establishing claim preclusion.

II. But even if the Court somehow disagrees with these arguments, Rule 11 sanctions cannot properly be imposed under binding Fifth Circuit precedent. Rule 11 is not intended to "chill attorneys' enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories." *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 885 (5th Cir. 1988) (en banc). Courts therefore do "not impose Rule 11 sanctions for advocacy of a **plausible** legal theory … ." *Snow Ingredients*, 833 F.3d at 528 (citation omitted) (emphasis added). Instead, sanctions are reserved for when arguments are "so obviously foreclosed by precedent as to make them legally indefensible." *Id.* at 529. Whatever the Court ultimately decides on the claim preclusion question, the Supreme Court's guidance in *Hellerstedt* alone shows that counsel's position is far more than "plausible" and not "obviously foreclosed."

Further, Rule 11 dictates that any sanction "must be limited to what suffices to deter repetition of the [sanctioned] conduct." Fed. R. Civ. P. 11(c)(4). In other words, "the least severe sanction adequate to serve the purpose should be imposed." *Thomas*, 836 F.2d at 878. So when an attorney's conduct is "not intentional or malicious," courts impose nonmonetary sanctions such as "an admonition by the court." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007). No factors here support monetary sanctions.

* * *

A motion for Rule 11 sanctions is a very serious matter that is reserved for plain abuses. This is not remotely one of those cases. Unfortunately, however, there is abuse at play here. The timeline reveals that the State cannot genuinely believe this case is so obviously claim precluded that sanctions are warranted, or that Plaintiffs' counsel needs to be punished for a supposed lack of command of civil procedure. Instead, the facts show that this motion is motivated by one or both of two things: (1) retribution over being criticized by FPC in a September 1, 2026 press release

announcing Plaintiffs' preliminary injunction motion; and (2) delaying this case long enough for the Legislature to change the law and moot this case. Neither motivation is an appropriate basis to attack Plaintiffs' counsel under Rule 11.

The Court should deny the motion and award Plaintiffs the expenses incurred in opposing it. Fed. R. Civ. P. 11(c)(2). This motion "should never have been filed." *Vanliner Ins. Co. v. DerMargosian*, 2014 WL 1632181, at *2 (N.D. Tex. 2014) (awarding fees under Rule 11(c)(2)). The Court need not agree that the motion was brought for an improper purpose to make such an award, although such a finding would bolster a decision to award expenses.

At an absolute minimum, the motion for sanctions should be denied.

## BACKGROUND

The timeline reveals what's really going on here:

### I. <u>December 2024 To September 2025</u>: FPC And Nonresident Plaintiffs Bring *Mate* And The Fifth Circuit Decides The 18-To-20 Issue In *Reese*.

FPC and two non-Louisiana residents filed *Mate* in December 2024 to challenge the State's refusal to issue carry permits to **nonresidents** under La. R.S. § 40:1379.3**(C)(3).** Given the State's choice to deny nonresidents the opportunity to obtain a permit (and thus an exemption from application of the federal Gun Free School Zone Act), these nonresidents were effectively denied the opportunity to carry in nearly all of the State.

No Louisiana residents were plaintiffs in *Mate*, let alone plaintiffs under the age of 21, and FPC did not purport to sue on behalf of any such persons. Rather, the complaint specifically stated that FPC was suing "on behalf of its members who are *not* Louisiana residents but who are legally eligible to possess and acquire firearms and who desire to or would apply for a Louisiana carry license but for Defendants' enforcement of the laws at issue in this case." *Mate* Compl., ¶ 11 (emphasis added). The complaint sought (1) declarations that "the residency requirement for obtaining a carry license in L. Rev. Stat. § 40:1379.3(C)(3)" is unconstitutional under the Second Amendment and the Privileges and Immunities Clause, and (2) an injunction enjoining the

Department of Public Safety and the Attorney General from enforcing the State's carry license residency requirement. *Mate* Compl. Prayer For Relief, ¶¶ 1–4.

When *Mate* was filed, the Fifth Circuit had not yet recognized the Second Amendment's protection of adults under the age of 21. But while *Mate* was pending, the Fifth Circuit decided *Reese v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, where it squarely held that "eighteen-to-twenty-year-olds were indeed part of 'the people' for Second Amendment purposes." 127 F.4th 583, 595 (5th Cir. 2025).[2]

The Attorney General's office proposed that *Mate* be held in abeyance so the Legislature could repeal § 40:1379.3(C)(3). While discussing the possibility of a legislative fix, FPC offered proposed legislation that would repeal the nonresident provision, and—based on the Fifth Circuit's recent decision in *Reese*—also remove the unconstitutional age requirement in (C)(4). The Attorney General's office asked counsel to confirm that the *Mate* "lawsuit doesn't currently raise [the 18-20 year old] issue." Duvernay Decl., Ex. A. Counsel responded that "[t]he current lawsuit does not raise the issue, but FPC has filed several cases in other jurisdictions (including *Reese*) and is prepared to file suit raising the same claims against Louisiana." *Id.*

The parties then jointly moved to hold *Mate* in abeyance, which the district court granted. In June 2025, the Louisiana Legislature repealed § 40:1379.3(C)(3), but left the age requirement in place. This repeal mooted the *Mate* case, which led to a dismissal in September 2025.

## II. <u>July 2026</u>: Plaintiffs File The *Pool* Case; The Solicitor General Reports That People In His Office Are "Unhappy," But The State Needs 60 Days To "Assess" Its Position And May Not Even Oppose The Case.

The Louisiana Legislature declined to repeal the under-21 permitting prohibition during its legislative sessions ending October 2025 or June 2026. So, in this case, a **different class** of plaintiffs from the class in *Mate* has challenged the **separate provision** in Louisiana's firearms

[2] The individual plaintiffs in *Reese* had aged out of the 18-to-20-year-old class by the time *Mate* was filed. Motion to Supplement the Record at 1–2, *Reese v. BATFE*, 127 F.4th 583 (5th Cir. 2025) (No. 23-30033) (December 2023 filing explaining that one plaintiff had turned 21 and the other would "turn 21 later this year").

permitting scheme, La. R.S. § 40:1379.3**(C)(4)**, which prohibits issuing carry licenses to anyone under the age of 21. The three individual plaintiffs in *Pool* are Louisiana residents under the age of 21. They were not members of FPC while *Mate* was pending. Combs Decl., ¶ 3. Indeed, McDuffie and Matthews were not even 18 during the *Mate* case. ECF 2-5, McDuffie Decl., ¶ 2; Matthews Decl., ¶ 2. FPC is suing "on behalf of those members who are between 18 and 20 years of age and who are legally eligible to possess and acquire firearms and who wish to apply for a Louisiana concealed handgun permit." *Pool* First Amended Compl., ¶ 12.

On July 28, 2026, Plaintiffs' counsel emailed the *Pool* complaint to Louisiana Solicitor General Aguiñaga, who handled *Mate* for the State. The Solicitor General responded to this email a week later, on August 4. Despite now claiming that it is so apparent that the *Pool* case is claim-precluded that FPC and its counsel should be *sanctioned* under Rule 11 for even filing the case, the Solicitor General didn't respond to the news of the new complaint by saying *anything* about preclusion barring the suit. Instead, he sent an email to Plaintiffs' counsel that completely undermines the State's sanctions theory:

**Subject:** RE: Pool v. Hodges, W.D. La. No. 6:26-cv-2650
**Date:** Tuesday, August 4, 2026 at 8:24:38 AM Pacific Daylight Time
**From:** Aguinaga, Ben
**To:** Steve Duvernay
**CC:** Faircloth, Zachary, George Armbruster III
**Attachments:** image001.png

Steve—I have some unhappy people on my end given the lack of a courtesy pre-suit reachout notwithstanding how we worked with you all through the *Mate* suit. In addition, as you may be aware, LSP is undergoing a transition with Colonel Hodges departing. We would thus appreciate your consent to a 60-day extension of our answer deadline as we assess the State's position on your complaint; as you know from *Mate*, the position may not be adverse, and so I think this extension will benefit all parties. Thanks.

Ben

**J. Benjamin Aguiñaga**
Solicitor General
Office of Attorney General Liz Murrill
Tel: (225) 506-3746
aguinagab@ag.louisiana.gov
www.AGLizMurrill.com

Duvernay Decl., Ex. B (emphasis added) (August 4, 2026 email from Solicitor General Aguiñaga).

If, as the State now contends, this case is so self-evidently precluded that sanctions are warranted, wouldn't it have been immediately apparent to the Solicitor General (or others in his office) that the State didn't need 60 days to "assess" its "position?" After all, he handled the earlier case, and the State now claims that *Plaintiffs'* "counsel ***did not need a 'reasonable inquiry'*** to uncover the facts establishing preclusion because they already knew them firsthand," since they were the same lawyers in both cases. Mot. 10 (emphasis added). After one week to digest the new complaint, why did the State need any more time at all, let alone 60 days, to see what is now supposedly so manifestly clear that sanctions are justified? And if the Complaint were so obviously improper as to justify sanctions, why would the Attorney General's office say that the State's "position may not be adverse?"

This email alone suffices to demonstrate that sanctions cannot possibly be imposed here.

## III. Mid-August 2026: The State Proposes To *Expand* The Litigation By Bringing The United States Into The Case.

On August 13, the State filed a Notice of Constitutional Question and Request for Certification Under Rule 5.1 (ECF 6). It argued that this case actually challenges the constitutionality of the Federal Gun Free School Zones Act and asked the Court to invite the United States to intervene. No mention whatsoever was made of the State's current theory that this case is so obviously barred by claim preclusion that sanctions are in order. If the State really thought this case deserved to be dismissed as a Rule 11 sanction, why would it ever have asked this Court to dramatically **expand** this litigation to include the United States? More than three weeks after the case had been filed, the State had apparently not thought of its claim preclusion gambit.

What changed to make the "unhappy people" in the Attorney General's office transition from potentially not opposing the case in early August, and trying to expand the litigation in mid-August, to suddenly arguing in early September that this case is so obviously claim-precluded that the Plaintiffs' lawyers should be sanctioned for having filed it?

### IV. September 1, 2026: Plaintiffs File The Preliminary Injunction Motion And FPC Issues A Press Release.

FPC issued a press release on September 1, 2026, the day Plaintiffs filed their preliminary injunction motion. The release explained the history of *Mate* and the related legislative changes, and it criticized Louisiana for failing to "fix[] the constitutional problem when FPC first raised it." FPC committed to fighting restrictions on firearms rights, regardless of the political party involved: "If you have an unconstitutional law on the books—red state, blue state, or purple state, it doesn't matter—we're coming for it." *FPC Asks Federal Court to Block Louisiana's Ban on Gun Carry Permits for 18-to-20-Year-Old Adults*, Firearms Policy Coalition (Sept. 1, 2026), https://www.firearmspolicy.org/fpc-asks-federal-court-to-block-louisianas-ban-on-gun-carry-permits-for-18-to-20-year-old-adults.

Until then, the State never suggested to Plaintiffs' counsel that it thought this case was precluded. Six days later—on Monday, September 7 (Labor Day)—the State emailed Plaintiffs' counsel to give notice that it would seek Rule 11 sanctions on claim-preclusion grounds. Duvernay Decl., Ex. C.

The motion itself reveals that FPC's press release caused this turn of events. The motion refers repeatedly to the press release and FPC's "public relations campaign," at pages 4 and 11. Most revealing of all, the State's proposed "alternative" sanctions relief asks the Court to order FPC to "issue a public corrective statement through the same channels used to promote this suit." Mot. 11. No mention is made of exactly what is to be "corrected," and the State doesn't explain how this compelled speech would not violate the First Amendment.[3]

Finally, that the allegedly obvious preclusion bar was only raised after Plaintiffs filed a preliminary injunction motion—and after the State earlier sought to expand the case—strongly

[3] *See, e.g.*, *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 768 (2018) (strict scrutiny is appropriate except where the government compels "factual, noncontroversial information in … 'commercial speech'" or professional conduct incidentally involving speech); *Phi Theta Kappa Honor Soc'y v. HonorSociety.org, Inc.*, 2025 WL 1030240, at *2–*3 (5th Cir. 2025) (holding injunction requiring disclaimer on party's website was impermissible compelled speech even under *Zauderer*'s commercial speech standard).

suggests that the sanctions motion was brought to delay the case. If the case can be stretched out to the Spring of 2027, the Louisiana Legislature can change the law and moot the case. Indeed, when the Attorney General's office notified Plaintiffs' counsel that it would be filing the motion, it threatened to run up its sanctions demand if Plaintiffs didn't agree to defer the preliminary injunction motion. It even threatened to pursue discovery on its sanctions theory. Duvernay Decl., Ex. C; *cf.* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment (discovery on sanctions question allowed "only in extraordinary circumstances.").

Given the gravity of a Rule 11 motion, Plaintiffs agreed to pause litigation on the preliminary injunction so that the sanctions issue can be fully resolved now, even though they are suffering irreparable harm from the ongoing denial of their Second Amendment protected rights. *See BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Lab.*, 17 F.4th 604, 618 (5th Cir. 2021).

**ARGUMENT**

**I. The State's Claim Preclusion Theory Is Wrong.**

Claim preclusion is intended to bar "'successive litigation of the very same claim' by the same parties" *Hellerstedt*, 579 U.S. at 599—not challenges to two "separate, distinct [statutory] provisions [that] set forth two different independent requirements" on distinct classes of people, *id.* at 604. *Mate*'s challenge to Louisiana's statutory prohibition on nonresidents obtaining a handgun carry license, regardless of age, is therefore manifestly not the same as a challenge to a separate statutory prohibition on Louisiana residents aged 18-to-20 receiving a permit.

Claim preclusion applies when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Snow Ingredients*, 833 F.3d at 521 (citation omitted). The State's argument that a challenge to one statutory requirement is the "same claim" as in a prior challenge to a *different* provision regulating different people is squarely foreclosed by *Hellerstedt*.

### A. This Case Does Not Raise The "Same Claim" As *Mate*.

#### 1. Challenges To Different Statutory Requirements Represent Different Claims.

The State argues that the claim in *Pool* arises from the "same nucleus of operative facts" as *Mate* because the facts "are closely related in origin, motivation, and geographic scope," "form a convenient trial unit," and "are related in time." Mot. 6–7. But the State does not cite a single case that says a second suit based on a statute regulating a distinct group can be claim precluded by a prior case challenging a different statute affecting a separate and non-overlapping class of regulated parties for different purposes. There's a simple reason for that silence: The State's argument is wrong. It is foreclosed by *Whole Woman's Health v. Hellerstedt*, where the Supreme Court expressly rejected a nearly identical argument involving two separate abortion laws enacted in the same statute.[4] It confirmed that "treating" different parts of "every statutory enactment as a single transaction which a given party would only be able to challenge one time, in one lawsuit," is not how claim preclusion works. 579 U.S. at 605. The State simply ignores *Hellerstedt*.

In *Hellerstedt*, overlapping groups of abortion providers challenged two Texas statutes in successive cases; both statutes were adopted at the same time in Texas House Bill 2. 579 U.S. at 591–92. One provision required providers to have admitting privileges at nearby hospitals. *Id.* at 590. The other required abortion facilities to meet standards set for ambulatory surgical centers. *Id.* at 591. In the first case, a group of providers argued that the admitting privileges requirement imposed an undue burden on Texas women's abortion rights. *Id.* at 591. After losing, providers brought a new case arguing that the surgical-center provision imposed a similar undue burden on Texas women's access to abortion.[5] *Id.* at 592. The Fifth Circuit held that the second challenge

---

[4] The Fifth Circuit's rejected reasoning echoes the State's here: the court emphasized that "the provisions at issue were enacted at the same time as part of the same act," "form a convenient trial unit," and could have been challenged at the same time. *Whole Woman's Health v. Cole*, 790 F.3d 563, 581–82 (5th Cir. 2015).

[5] The providers also brought a new as-applied challenge to the admitting-privileges requirement which was held not to be claim precluded due to "changed circumstances" and the "later, concrete factual developments" of abortion clinics closing. *Hellerstedt*, 579 U.S. at 601–02.

was claim precluded by the earlier suit, relying on a similar "common nucleus of operative facts" theory the State invokes here. *Id.* at 604.

But the Supreme Court flatly rejected the argument that Louisiana makes here. The Court explained that it has "never suggested that challenges to two different statutory provisions that serve two different functions must be brought in a single suit" and that "challenges to distinct regulatory requirements [are normally treated] as 'separate claims,' even when they are part of one overarching '[g]overnment regulatory schem[e].'" *Id.* at 604–05 (citation omitted). The Fifth Circuit's approach—"treating every statutory enactment as a single transaction which a given party would only be able to challenge one time, in one lawsuit, in order to avoid the effects of claim preclusion"—would encourage a "kitchen-sink approach to any litigation challenging the validity of statutes" that "is less than optimal—not only for litigants, but for courts." *Id.* at 605.[6]

As in *Hellerstedt*, Louisiana's two permitting prohibitions (the nonresident provision in *Mate* and the age requirement here) "set forth two different, independent requirements." *Id.* at 604. But while the two statutes in *Hellerstedt* affected the *same* class of people (abortion providers suing on behalf of Texas women seeking abortions), the two statutes here affect disparate classes of people: The removal of the nonresident provision did nothing to vindicate the Second Amendment rights of 18-to-20-year-old Louisiana residents like the Individual Plaintiffs here.

This is an easy call under *Hellerstedt*. The State attempts to lump the two claims together as challenges to "the same statewide Louisiana concealed-handgun permitting regime." Mot. 6. *Hellerstedt* rejected that level of generality and instead treated challenges to different provisions of the same regulatory scheme as "separate claims." 579 U.S. at 604–05. Under *Hellerstedt*, "the

---

[6] The State cannot be heard to argue that the Supreme Court overruling *Hellerstedt*'s separate application of the "undue burden" test for abortion claims matters here. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 292 (2022). *Dobbs* did not overrule *Hellerstedt*'s claim preclusion ruling. *See*, *e.g.*, *Texas Med. Ass'n v. U.S. Dep't Health & Hum. Servs.*, 2023 WL 4977746, at *5-6 (E.D. Tex. 2023) (applying *Hellerstedt* to find no claim preclusion in second case challenging separate portion of a federal rule at issue in prior case; noting that *Dobbs* abrogated *Hellerstedt* "on other grounds").

doctrine of claim preclusion does not prevent [Plaintiffs] from bringing [this] challenge now." *Id.* at 606. That settles it.[7]

Louisiana's problems don't end there. Separate and apart from its failure to cite *Hellerstedt*, the State misapplies the authority it does cite. First, there is no overlap in "geographic scope" between the claims here and in *Mate*, and "the origin and motive of the claims are [plainly] unrelated": In *Mate*, one statutory provision specifically denied non-Louisiana residents handgun carry licenses; here, a different provision bars Louisiana adults aged 18-to-20 from securing a permit. *See Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1089 (5th Cir. 2022) (defining the scope of claim preclusion by looking to nature of parties and type of relief sought, rather than similarity of legal issue); Mot. 6–7. The individual plaintiffs in *Mate* were nonresidents who were over the age of 21, so they were unaffected by the provision challenged in this case. And the Individual Plaintiffs here are all Louisiana residents; *Mate* (and the subsequent legislative change) did nothing to change their status—they are still denied carry permits. Because the age requirement raises different issues than the nonresident provision and impacts a different class of plaintiffs than those involved in *Mate*, the two claims do not form "a convenient trial unit." Mot. 7.

Moreover, the age-based claim in this case is not "related in time" to the nonresident claim in *Mate*. The Fifth Circuit did not resolve the 18-to-20 Second Amendment issue until after *Mate* was filed. It is black letter law that "[c]laim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405, 414 (2020) (citation omitted). Two of the Individual Plaintiffs were not even 18 during *Mate*. Put simply, a claim cannot derive from "the same nucleus of operative facts" when it involves a different regulatory provision burdening an unrelated class of people.

[7] The State's argument fails even under the logic of *Hellerstedt*'s principal dissent: the "operative fact" in *Mate* (restricting nonresidents' carry rights) is entirely different from operative fact underlying this action (restricting 18-20-year-olds' carry rights). *See* 579 U.S. at 649–50 (Alito, J., joined by Roberts, C.J., and Thomas, J., dissenting).

The State's cases are quite different than this case. In *Devins v. Armstrong*, the plaintiff brought repeated actions challenging the same denial of a visa for a foreign student he wanted to sponsor. 167 F.4th 247, 250 (5th Cir. 2026). The district court dismissed the third such suit as precluded, *id.* at 251, and the Fifth Circuit agreed that the "same claim" was involved because each of the "serial actions concern[ed] the same visa denial [and] assert[ed] the same cause of action," *id.* at 252. *Devins* involved one underlying administrative decision that affected one party; it does not address separate regulations that burden separate groups of people.

*Oreck Direct, LLC v. Dyson, Inc.* involved a false advertising action about one Dyson vacuum model filed after an earlier case attacked Dyson's vacuum advertising generally. 560 F.3d 398, 400 (5th Cir. 2009). Because the two suits alleged the same cause of action and the earlier action was not limited to particular Dyson models, the court held that the new claim arose from the same series of transactions as the first action. *Id.* at 403–04. *Oreck Direct* concerns whether an action addressing a group of transactions could preclude a later claim about one transaction in that group. It says nothing about distinct regulations on separate classes of people.

On the other hand, *Students for Fair Admissions* proves Plaintiffs' point: The Fifth Circuit found the claims distinct because they arose from different admissions denials to different people, based on different policies, and sought different relief. 37 F.4th at 1089. The same goes here: this case involves distinct restrictions on separate groups from *Mate* and therefore raises different "claims" under the transactional test.

A final note is in order about the State's repeated assertions that FPC used the "threat" of litigating the 18-20 issue as "leverage" in the "negotiations" over the *Mate* case, as if the parties were negotiating a settlement and release of claims. Mot. 1, 10. Not so. When it comes to changing Louisiana law to moot a lawsuit, the Attorney General's office is distinct from—and does not control—the Louisiana Legislature, so there was nothing to "negotiate." In any event, the State fails to connect this supposed exertion of "leverage" to any aspect of claim preclusion doctrine. This is just irrelevant window dressing.

The State argues that this "is not a close claim-preclusion question." That's right. Under binding Supreme Court precedent, the claim here is different from the one in *Mate*. Indeed, this case is more straightforward than *Hellerstedt*. There, the two challenged provisions affected the same groups of providers and Texas women, but that was not enough to treat the two challenges as one "claim." Louisiana's age requirement burdens a different group than its former nonresident provision, and so there is even more daylight between the two claims at issue here.

**2. The State's Approach Would Lead To Absurd Results.**

The State's theory is not just "less than optimal," *Hellerstedt*, 579 U.S. at 605, it is a wild departure from settled claim-preclusion principles. At bottom, the State's theory is that an organization must challenge, in a single suit, every provision of a statutory scheme that might affect any of its members—however fundamentally different those provisions are—or else lose the right to challenge them forever. It is worth emphasizing the ramifications of this argument.

As the Supreme Court has noted, "[s]tatutes are often voluminous, with many related, yet distinct provisions." *Id.* at 606. Louisiana Revised Statute § 40.1379.3 is no different, covering a variety of subjects and with 16 different prohibitions on receiving carry permits. § 40.1379.3(C)(4)–(19). One of those prohibitions incorporates the many prohibitions in federal law as well. *Id.* § (C)(17) (prohibiting carry license for person "ineligible to possess or receive a firearm under 18 U.S.C. 922(g) or (n)"). As Second Amendment doctrine develops, more and more of these categories of prohibitions are being challenged in the courts. For example, subsection (C)(6) bans licenses for felons. *But see United States v. Cockerham*, 162 F.4th 500, 503–04 (5th Cir. 2025) (holding disarmament of a non-violent felon unconstitutional); *Range v. Att'y Gen.*, 124 F.4th 218, 232 (3d Cir. 2024) (en banc) (similar); *Williams v. Att'y Gen.*, No. 24-1091 (3d Cir. Oct. 13, 2026) (slip op. at 22) (affirming unconstitutionality of 922(g)(1) as applied to DUI offender); *United States v. Bost*, No 24-1719 (3d Cir. Oct. 13, 2026) (slip op. at 16) (upholding 922(g)(1) as-applied only when "a judge finds that he poses a risk of physical violence from misusing guns"); *United States v. Cordova*, No. 24-50564 (5th Cir. Sept. 14, 2026) (granting en banc rehearing of challenge to Section 922(g)(1)). And subsection (C)(12) prohibits issuing

licenses to marijuana users. This would seem plainly unconstitutional in many applications after *United States v. Hemani*. 608 U.S. 772, 794–95 (2026) (history and tradition does not support disarmament for bare marijuana use).

Organizations often have broad classes of members who face different factual situations that subject them to some, but not other, provisions in a statutory scheme. Under the State's claim preclusion theory, if FPC had one member with a felony conviction or single member who uses marijuana, FPC could *never* challenge those provisions because it did not challenge them in *Mate*. And FPC's members would be barred forevermore. So for FPC (and its members and future members) to avoid that result, FPC should have (a) canvassed its membership to determine whether any members fit within the groups affected by the disparate subsections; (b) convinced those members to participate in a lawsuit, whether as individual plaintiffs or declarants to support FPC's standing; and (c) amended the *Mate* complaint to add every subsection its members might be able and willing to support. This is precisely the "kitchen-sink approach" *Hellerstedt* condemns, and it would strongly undermine the primary goal that claim preclusion is supposed to serve.

Claim preclusion is aimed at *promoting* judicial efficiency by eliminating serial litigation of the same claims. *See*, *e.g*., *Currier v. Virginia*, 585 U.S. 493, 510 (2018) ("[C]laim … preclusion ha[s] sought to 'promot[e] judicial economy by preventing needless litigation.'") (citation omitted). Contorting the test to require public policy organizations to load up their complaints with every conceivable challenge for which their members could support standing—and add representative members from all such groups as individual plaintiffs—would totally subvert the goal of judicial efficiency.

### B. The Parties In *Pool* Are Not Identical To Or In Privity With Those In *Mate*.

That this case and *Mate* presented different claims is enough to defeat the State's claim preclusion argument. But it also fails on the identity-of-parties prong of the preclusion standard. It is a "fundamental" rule that "a litigant is not bound by a judgment to which she was not a party." *Taylor*, 553 U.S. at 898. This principle is subject only to limited exceptions, none of which are present here. *Id.* at 893–95 (describing "the recognized exceptions").

The Individual Plaintiffs were not parties in *Mate*. Nor were they otherwise being represented in *Mate*: They were not members of FPC at the time. *See Meza*, 908 F.2d at 1266, 1272 (party who was not a member of a union at the time the union brought a previous case not precluded by judgment in that case). And Plaintiff McDuffie was not even 18 until after *Mate* concluded. Res judicata, of course, "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).

The State briefly suggests that the Individual Plaintiffs may now be acting as "proxies" for FPC, Mot. 5, but makes no argument as to why they would be FPC's agents as required by this exception to nonparty preclusion. *Taylor*, 553 U.S. at 905 (explaining that courts should "treat the [proxy] issue as one of agency"). *Taylor*'s discussion of "virtual representation" has no application here. Separate and apart from whether the individual plaintiffs could possibly be considered FPC's "agents," there is nothing surreptitious or "undisclosed" here about FPC's involvement. *Id.* Instead, *Taylor* explains that the proper focus in a representative capacity suit such as this is whether the nonparties to *Mate* were "adequately represented" by FPC in the prior case. *Id.* at 894, 905. That showing can't be made here because FPC was representing *an entirely different group* in *Mate*. *Id.* at 894 (noting adequate representation as basis for nonparty preclusion). Here, as in *Taylor*, FPC was not "suing on [the *Pool* plaintiffs'] behalf," and there is no showing that the *Pool* plaintiffs "even knew" of the prior suit, or that the "District Court took special care to protect [their] interests." *Id.* at 905; *see also* 18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4454 (3d ed.) ("Wright & Miller") (suggesting that preclusion should be "[c]onfin[ed] … to the interests directly represented").

Likewise, while FPC is, in form, a party in both cases, the State overlooks that it only has standing derivative of its members. Since the State has not shown that FPC had standing to bring the 18-to-20 challenge in *Mate*, it has not carried its burden on the same-party prong. Associational standing "is derivative of the standing of the [organization's] members." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). The State simply assumes that FPC had 18-to-20-year-

old members eager to participate in a lawsuit, but presents no facts to support this.[8] FPC's member plaintiffs in *Reese* were older than 21 by the time of the *Mate* litigation. And Plaintiffs' counsel's statement that "FPC is prepared to file suit" does not mean that it was able to file "right now." As the Fifth Circuit has explained, "a judgment for or against a person in one representative capacity is not res judicata for or against him in another representative capacity." *Garrett v. First Nat'l Bank & Tr. Co.,* 153 F.2d 289, 291 (5th Cir. 1946); *see also Wright & Miller*, *supra*, § 4454 ("Another fundamental limitation is that litigation in one capacity, individual or representative, does not preclude relitigation in a different capacity, individual or representative.").

The State cites *Wright & Miller*'s proposition that an association cannot evade claim preclusion by "averring that unidentified members are not bound and bringing successive suits by claiming injury to different identified members." Mot. 5. But the problem addressed in those cases involved "a manifest attempt to relitigate the same problem"—not new litigation to a *different* problem affecting a *separate* class of people under a separate statute. *Wright & Miller*, *supra*, § 4456 n.31. And as *Wright & Miller* acknowledges, courts have "not yet grappled" with the preclusion questions raised by organizational standing. *Id.*

In short, the State has not carried its burden of showing the same parties brought the separate suits. Because the State's inability to satisfy the "same claim" requirement is so plain, however, the Court does not have to decide this issue in Plaintiffs' favor to reject the State's claim preclusion theory. And, as shown below, it need not agree with Plaintiffs on either argument to deny the demand for sanctions.

---

[8] Even if FPC did have such members, the State provides no authority requiring an organization to file suit. The Fifth Circuit has "specifically reject[ed] the idea that every time something happens after a lawsuit is filed the plaintiff must immediately amend or risk losing that claim forever." *Welsh v. Fort Bend Indep. Sch. Dist.*, 860 F.3d 762, 767 (5th Cir. 2017) (holding that the only claims barred by claim preclusion are those that were mature at the time that the plaintiff filed her previous case).

## II. The State's Sanctions Motion Is Improper.

### A. Sanctions Are Permissible When A Legal Position Is Not "Plausible" or "Obviously Foreclosed," So When A Supreme Court Decision Supports Plaintiffs' Litigation Position, Sanctions Cannot Be Imposed.

Rule 11 requires an attorney to certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). This rule imposes a standard of objective reasonableness. *Snow Ingredients*, 833 F.3d at 528. The standard is not violated—and sanctions are not warranted—when counsel advocates "a **plausible legal theory**, particularly where … the law is arguably unclear." *Id.* (emphasis added). As explained above, Plaintiffs' legal theory on claim preclusion is not just "plausible," it is **correct** under binding Supreme Court caselaw.

Thus, even if this Court somehow finds that the case is claim precluded, that is not a basis for imposing sanctions. A claim's failure is insufficient to warrant sanctions—it must be "so **obviously foreclosed** by precedent as to make [it] legally indefensible." *Id.* at 529 (emphasis added); *see also Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 553 (7th Cir. 2011) ("[T]he district court properly denied the motion for sanctions because the claims in this suit were neither frivolous nor designed to harass or abuse.").

Here, the Plaintiffs' legal argument is the polar opposite of "obviously foreclosed." As shown above, Plaintiffs' argument is *correct* under the Supreme Court's guidance in *Hellerstedt* that different regulatory provisions represent "separate claims." 579 U.S. at 605. Indeed, as shown above, if this case really were obviously foreclosed on preclusion grounds, the State would not have (a) responded to the complaint by saying it needed 60 days to "assess [its] position," or (b) asked this Court to expand the case by inviting the United States to participate. Likewise, the State has failed to carry its burden on the "same party" issue, let alone show that Plaintiffs' argument isn't "plausible." At a minimum, the fact that courts "have not yet grappled with the preclusion questions that are bound to follow" from the principles underlying organizational standing means that precedent does not *obviously* foreclose Plaintiffs' argument. *Wright & Miller*, *supra*, § 4456.

The State's cases illustrate the gulf between a sanctionable case and this case. Mot. 9. This is a vastly different situation than presented in *Robinson v. Nat'l Cash Register Co.*, where claim preclusion was so "obvious" as to violate Rule 11's "reasonable inquiry" standard. 808 F.2d 1119, 1131 (5th Cir. 1987). In the prior suit to *Robinson*, two individuals sued their sublessor over contamination of their subleased premises and lost. *Id.* at 1121. They then sued again over the same subject matter, adding their controlled business as an additional plaintiff and the ultimate landlord as an additional defendant. *Id.* "[I]n both suits the Robinsons sought to recover for claimed personal injuries, loss of business, and loss of profits arising out of the contamination of the subleased air space by [the lessor]. The same nucleus of facts is involved, and the relief requested in the two suits is identical." *Id.* at 1125. That situation, where "res judicata clearly precluded the second suit," *id.* at 1131, is a far cry from suits challenging separate injuries to entirely different classes of parties imposed by distinct statutory provisions.[9]

The same is true of *Southern Leasing Partners, Ltd. v. McMullan*, which involved a series of foreclosure actions over a ship in which the plaintiffs brought various contract claims and alleged federal and state securities violations. 801 F.2d 783, 784–85, 786 n.2 (5th Cir. 1986). The original suits ended with a judgment against the plaintiffs and a partial consent judgment between the parties. *Id.* at 784–85. The plaintiffs then hired new counsel to bring another suit over the same events. Due to an impending statute of limitations, counsel forewent substantial investigation and filed a complaint that duplicated the prior suit: the claims arose from the same foreclosure, involved "[n]o 'new' facts," and raised similar arguments. *Id.* at 786, 788. *Southern Leasing* was an incident of repeat litigation over the same facts, which would have been found by a

[9] While *Robinson* involved a "clear" application of res judicata in two suits based on "identical factual situation[s]," it is worth noting that "[r]es judicata is an affirmative defense," *Banc One Cap. Partners Corp. v. Kneipper*, 67 F.3d 1187, 1199 (5th Cir. 1995), and plaintiffs do not generally "violate Rule 11(b)(2) by failing to anticipate an affirmative defense that a defendant may or may not assert," *Moore v. Vital Prods., Inc.*, 2009 WL 275475, at *14 (N.D. Ill. Feb. 3, 2009), *aff'd in part, rev'd in part*, 641 F.3d 253 (7th Cir. 2011).

"'[r]easonable inquiry' into the law of res judicata." *Id.* at 789. By contrast, the facts and the laws are different in *Pool* and *Mate*.[10]

Compare these to *Snow Ingredients*, where the defendant argued that a plaintiff should be sanctioned because its legal claim was foreclosed by precedent. 833 F.3d at 529. Because plaintiff had a "colorable" argument that its claims could be distinguished from that precedent, sanctions could not be imposed. *Id.* at 528–29. Similarly, in *CJC Holdings, Inc v. Wright & Lato, Inc.*, the district court had sanctioned a party on the basis that a reasonable inquiry would have shown that its own motion for sanctions was procedurally foreclosed by Fifth Circuit precedent. 989 F.2d 791, 793 (5th Cir. 1993). On appeal, however, the court concluded that it was "at least plausible" that the case was "arguably closer" to a Supreme Court decision that supported the motion, so the sanctions order was reversed. *Id.* at 793, 794.

This case is far easier: Plaintiffs' argument against claim preclusion is not just "plausible," and there is no precedent that "obviously forecloses" it. To the contrary, Plaintiffs' arguments are strongly supported by precedent.

### B. Even If The Court Deems Sanctions Warranted, Sanctions Must Be Limited To The "Least Severe" Option "Adequate" To Deter.

If, despite the foregoing, the Court somehow concludes that sanctions are warranted, any sanction "must be limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). This "ensures that Rule 11 does not degenerate into [a device used] to punish unsuccessful litigants who dare to raise their claims or defenses in federal court." *Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 535 (5th Cir. 1992).

[10] The State's cases in footnote 2 of its motion confirm the point. For example, *Paganucci v. City of New York* involved an "attempt to revisit the [prior case's] settlement as to those plaintiffs who … had their claims therein dismissed on the merits." 993 F.2d 310, 312 (2d Cir. 1993). And in *Fermin v. Nat'l Home Life Assurance Co.*, the plaintiff brought two cases arising out of one denial of hospitalization benefits. 15 F.3d 180, 1194 WL 24922, at *1 (5th Cir. 1994) (unpublished). None of the cases the State musters where sanctions were granted over a claim precluded filing addressed two suits challenging distinct regulatory burdens on separate classes.

1. The Fifth Circuit views this principle as requiring courts to impose "the least severe sanction adequate to the purpose of Rule 11." *Thomas*, 836 F.2d at 878. And because "Rule 11's primary purpose is deterrence," *Heisler v. Kean Miller, LLP*, No. CV 21-724, 2021 WL 5919507, at *7 (E.D. La. Dec. 15, 2021), "[s]anctions should … be educational and rehabilitative in character and … tailored to the particular wrong," *Thomas*, 836 F.3d at 877. As to what constitutes the "least severe sanction," the Fifth Circuit has observed: "What is 'appropriate' may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Id.* at 878. In all events, the chosen sanction must be "limit[ed] … 'to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'" *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 808 (5th Cir. 2003) (en banc) (quoting Fed. R. Civ. P. 11(c)(4)).

One important factor to consider in determining an appropriate sanction is the history and characteristics of counsel, such as whether they have "engaged in similar conduct in other litigation" and the extent of their "train[ing] in the law." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. And the Fifth Circuit has noted that, since the point of Rule 11 is deterrence, the choice of sanction "depend[s] [in part] upon the parties." *Thomas*, 836 F.2d at 877. The attorney's "good reputation" may therefore be a "mitigating factor[]" in the Rule 11 context. *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 197 n.6 (3d Cir. 1988).

Counsel for the Plaintiffs have worked hard for many years to build their professional reputations, and they take offense at the State's use of Rule 11 to so casually impugn them. *Cf. FDIC v. Tekfen Constr. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988) (a sanctions finding "carries intangible costs for the punished lawyer or firm," because "[a] lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter"). The declarations filed with this Opposition give only a brief glimpse into counsel's decades-long effort to establish their reputations for professionalism. One matter merits attention here: In 2020, Louisiana Attorney General Jeff Landry's office hired Benbrook Law Group to represent Louisiana in federal litigation in the Northern District of California. Louisiana led a coalition of States seeking to intervene in

two cases challenging the Environmental Protection Agency regulations that Louisiana and other States sought to defend. Benbrook Decl., ¶ 10. In any event, Counsel are humbled and gratified by the supporting declarations of prominent attorneys attesting to their reputations. *See* Declarations of Jonathan F. Mitchell; McGregor Scott; James M. Wagstaffe.

2. Any form of sanction would be inappropriate here, and financial sanctions should not be considered. Where the sanctioned conduct is "not intentional or malicious," courts often impose **nonmonetary** sanctions such as "an admonition by the court." *Jenkins*, 478 F.3d at 265; *see also Raburn v. Wiener, Weiss & Madison*, 2019 WL 6696420, at *9 (M.D. La. 2019) (declining "to award a monetary sanction … because the … motion was not brought in bad faith and a monetary sanction [was] not necessary to deter this party or other similarly situated parties from similar behavior"). Plaintiffs' counsel's conduct here is nowhere near the line of "intentional or malicious," and does not warrant a monetary sanction.

Monetary sanctions, moreover, must also be limited to the "fees incurred in answering the sanctionable claims." *Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1194 (5th Cir. 1996). And the conduct of the moving party can affect the amount of such a sanction. For example, the movant has a duty to mitigate its expenses when monetary sanctions are requested. *Thomas*, 836 F.2d at 879. If they fail to do so, districts courts may "either reduce the award accordingly, or … decline to award any expenses." *Id.* Rule 11 motions must also be brought "prompt[ly]" and delay can likewise reduce a monetary award. *Id.* at 879–880. The State's delay must therefore cabin its ambition for monetary sanctions. Indeed, the delay explains why sanctions are improper in the first place. If the State's preclusion theory were so obviously correct, this issue would have been raised and resolved within days of *Pool*'s filing. But the State didn't raise its preclusion theory until after FPC issued its press release announcing the filing of the preliminary injunction.

## III. The Court Should Award Plaintiffs Their Expenses For Opposing The State's Motion.

Rule 11 cuts both ways. "[A] Rule 11 violation is a serious thing, and an accusation of such wrongdoing is equally serious." *Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*, 690 F. Supp. 728, 732 (N.D. Ill. 1988). Rule 11's demand that lawyers "think twice before filing" therefore "applies

with equal force when the filing includes a Rule 11 claim." *Id.*; *see also Foy v. First Nat'l Bank of Elkhart*, 868 F.2d 251, 258 (7th Cir. 1989) ("A frivolous request for sanctions is itself sanctionable.").

Rule 11 motions should not be used to "emphasize the merits of a party's position," to "intimidate an adversary into withdrawing contentions that are fairly debatable," or "to increase the costs of litigation." Fed. R. Civ. P. 11, Advisory Committee's note to 1993 amendment. Nor is it appropriate to rely on a Rule 11 threat "as a means of bullying a weaker opponent," *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992), or as a "hardball" tactic to inflict "intimidation and harassment," *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484–85 (3d Cir. 1987).

And yet here we are. After asking for 60 days to consider its position and then seeking to expand the case by inviting the United States to join the litigation, the State raised preclusion for the first time only after Plaintiffs moved for a preliminary injunction and FPC issued its press release. It threatened to escalate its sanctions demand unless Plaintiffs slowed that motion down. And it now asks the Court to compel FPC to "correct" its public statements.

"Rule 11 is not a toy." *Draper & Kramer*, 690 F. Supp. at 732. When a sanctions motion fails, a Court "may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). That "award does not require a cross-motion for sanctions and is available whether or not the original motion for sanctions itself violates Rule 11." *Harman v. City of Univ. Park*, 1997 WL 53120, at *1 (N.D. Tex. 1997). Under Rule 11(c)(2), an award of expenses must only "be warranted and reasonable." *Vanliner*, 2014 WL 1632181, at *1. The Rule 11 motion "need not have been frivolous to warrant a fee award under Rule 11(c)(2)," but an absence of "good-faith arguments" bears on whether fees are warranted, *Id.* at *2. Such is the case here: *Hellerstedt* plainly forecloses the State's claim preclusion theory, yet that controlling authority is never mentioned in its Rule 11 brief. An award of Plaintiffs' fees and costs incurred in responding to the motion is therefore warranted. *See Guzman v. Consumer L.*

*Grp., P.A.*, 2012 WL 13005300, at *5 (S.D. Ga. 2012) (exercising discretion to award fees in defending against "meritless Rule 11 motion").[11]

The Court need not find that a Rule 11 motion was brought for an improper purpose to award compensatory fees. But the strong evidence showing that Defendant has improperly deployed Rule 11 here confirms that a compensatory fee award is justified. Rule 11(c)(2) expenses are warranted where the moving party's "conduct … render[s] the litigation markedly less fair, less speedy, or more costly." *Adhikari v. Daoud & Partners*, No. 4:09-cv-1237, 2017 WL 5904782, at *9 (S.D. Tex. Nov. 30, 2017); *accord Roor Int'l BV v. Stinky's Smoke Shop, LLC*, No. 4:18-cv-735, 2021 WL 5514594, at *3 (E.D. Tex. Nov. 24, 2021) ("inference of improper motive" supported Rule 11(c)(2) expenses award).

*Adhikari* is instructive. In distilling Rule 11(c)(2)'s expense-shifting rules, the court explained that "[m]otions intended to intimidate or to impugn make litigation less fair," and "[m]otions without sound argument make litigation less quick and cost-effective." 2017 WL 5904782, at *9. Expenses are therefore warranted whether a sanctions motion is meant to drive up costs or does so only as a "byproduct of complex litigation." *Id.* The court then awarded expenses for responding to a "meritless" Rule 11 motion that delayed pending summary judgment proceedings. 2017 WL 5904782, at *9. As the court put it:

> The baselessness, onerousness, and inconvenience raise the inference of improper motive. Defendants' effort to impugn the integrity of Plaintiffs' counsel—insinuating that Plaintiffs' counsel had misrepresented its work as pro bono and thereby gained accolades through false pretenses—bolsters the inference of improper motive. In sum, Defendants' motion made the litigation markedly less fair and more costly, likely for improper reasons. This is more than enough to warrant the award of expenses.

*Id.* So too here. As shown above, the circumstances (and the motion itself) reveal that the State brought the Rule 11 motion to delay this case and to retaliate against FPC for its press release.

[11] This includes the expenses associated with retaining experts to advise on the State's arguments. *See Wright v. ASI Lloyds*, 2026 WL 1611917, at *9 (S.D. Tex. 2026) (memorandum and recommendation) (including expert fees and travel costs in Rule 11(c)(2) award).

Because this motion "should never have been filed," *Vanliner*, 2014 WL 1632181, at *2, the Court should award Plaintiffs their reasonable expenses under Rule 11(c)(2).

**CONCLUSION**

The sanctions motion should not have been filed. For the many reasons set out above, the Court should (1) reject the State's claim preclusion theory, (2) deny the State's request for any form of sanction, and (3) award Plaintiffs their expenses opposing the motion under Rule 11(c)(2).

Dated: October 20, 2026

Respectfully Submitted,

/s/ Bradley A. Benbrook
Bradley A. Benbrook*
Stephen M. Duvernay*
Jamie G. McWilliam*
BENBROOK LAW GROUP, P.C.
701 University Avenue, Suite 106
Sacramento, California 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com
jamie@benbrooklawgroup.com

/s/ George J. Armbruster III
George J. Armbruster III - #23432
ARMBRUSTER & ASSOCIATES, APLC
332 E. Farrel Rd,, Ste. D
Lafayette, LA 70508
Telephone: (337) 889-5511
george@arm-assoc.com

*Attorneys for Plaintiffs*

**Pro hac vice*