**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| ELLA POOL, et al.,<br><br>PLAINTIFFS,<br><br>v.<br><br>COLONEL FRANK J. BESSON,<br><br>DEFENDANT. | Civil Action No. 6:26-cv-2650<br><br>Judge: DCJ - DJA |

**DEFENDANT'S REPLY IN SUPPORT OF HIS RULE 11(C)(2) MOTION**

## INTRODUCTION

Louisiana holds opposing counsel in the highest regard. But that does not absolve their client, the Coalition, of the consequences for filing a lawsuit that the Coalition cannot lawfully file. That the Coalition does not seriously defend its own mistake confirms as much. And that reveals the most equitable solution to this situation: the dismissal of this suit without prejudice to the individual plaintiffs filing their own suit without the Coalition's involvement if they wish to do so. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008) ("[A] party bound by a judgment may not avoid its preclusive force by relitigating through a proxy."); *see* ECF 27 at 16 (agreeing that "there is nothing surreptitious or undisclosed here about [the Coalition's] involvement" (quotation marks omitted)). Louisiana accordingly would withdraw its request for monetary sanctions or a corrective statement. ECF 23-1 at 10–11. This would ensure that the Coalition's well-intentioned counsel suffer no adverse collateral consequences. And to be clear, Louisiana wishes no undue consequences for the Coalition, either: If the Court deems such a measure warranted, Louisiana would not oppose the Court giving the Coalition a cure period to dismiss this suit with prejudice (except as to the individual plaintiffs) under Rule 41. Whatever the remedy, it is clear that this case cannot proceed in its current form.

## ARGUMENT

### I. THE COALITION'S SUIT IS PRECLUDED.

As Louisiana explained in its opening brief, "[c]laim preclusion bars the litigation of claims that have been or should have been raised in an earlier suit." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin (SFFA)*, 37 F.4th 1078, 1087 (5th Cir. 2022) (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016)). That basic preclusion rule applies when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same

claim or cause of action was involved in both actions." *Devins v. Armstrong*, 167 F.4th 247, 252 (5th Cir. 2026) (citation omitted).

Critically, the Coalition does not dispute prongs (2) or (3): The *Mate* action plainly concluded with a final judgment on the merits rendered by a court of competent jurisdiction. ECF 23-1 at 5. That leaves only prongs (1) and (4), neither of which the Coalition seriously disputes.

### A. The Coalition Was the Same Party in *Mate*.

Start with the Coalition's reemergence in this case. The Coalition admits that it is "a party in both cases," ECF 27 at 16—*i.e.*, this case and *Mate*. That should be the end of the matter. Instead, the Coalition detours into a strange discussion of Article III standing while criticizing Louisiana for "present[ing] no facts" to show that the Coalition had "18-to-20-year-old members" who could have litigated this issue in *Mate*. ECF 27 at 16–17. That is misdirection.

*First*, only the Coalition knows the contents of its secret membership list—and the Coalition recently has complained that it has a First Amendment right to not disclose that list. *See* Br. for Appellants at 8, *Firearms Policy Coal., Inc. v. ATF*, No. 26-30154 (5th Cir. June 22, 2026), ECF 34.

*Second*, and more fundamentally, the Coalition has publicly said—as part of its half-decade-long litigation in this District on behalf of 18-to-20-year-olds—that it has had Louisiana members under the age of 21 at all relevant times. It has alleged as much from 2021 to today. ECF 17, ¶ 12; Compl. ¶ 29, *Reese v. ATF*, No. 20-cv-1438 (W.D. La. May 5, 2021), ECF 29. It represented that fact to the Fifth Circuit when it argued in December 2023—12 months before the Coalition filed *Mate* and 21 months before the Coalition dismissed *Mate* with prejudice—that the Coalition had "at least" one Louisiana member from Vermilion Parish who was 18 years old. Mot. to Supp. the Record at 1–2, *Reese v. ATF*, No. 23-30033 (5th Cir. Dec. 22, 2023), ECF 85-1; *contra* ECF 27 at 5 n.2 (stating that "[t]he individual plaintiffs in *Reese* had aged out of the 18-to-20-year-old class by the time *Mate* was filed," but omitting that the cited motion identified *another* Louisiana member who was 18). Just three

days after it dismissed *Mate* with prejudice in September 2025, the Coalition told this Court that it required relief "for all of [its] 18-to-20-year-old members," not just those in Louisiana, Mississippi, and Texas. Br. in Support of Pls.' Proposed Judgment and in Opp. to Defs.' Proposed Judgment at 14, *Reese v. ATF*, No. 20-cv-1438 (W.D. La. Sept. 19, 2025), ECF 81. And just four months ago, the Coalition told the Fifth Circuit that it has been able to keep its 18-to-20-year-old litigation alive for "more than half a decade" by "consistently ... identif[ying] new members" who fall within that age range. Appellants' Br. at 5–6, 22–24, *Firearms Policy Coal., Inc.*, No. 26-30154 (5th Cir. June 22, 2026), ECF 34. It is thus troubling to see the Coalition imply that it had no 18-to-20-year-old members in Louisiana during the relevant period.

*Third*, because the Coalition had the requisite members, this explains its representation to the State—five months before the Coalition dismissed *Mate* with prejudice—that the Coalition was "prepared to file suit raising [its] claim[] against Louisiana." ECF 23-3 at 6.

There is no question that the same party—the Coalition—has appeared in both *Mate* and this case. The Coalition thus is plainly subject to the "clear enough" rule that an association "should not be able to evade preclusion continually by averring that unidentified members are not bound and bringing successive suits by claiming injury to different identified members." 18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4456 (3d ed.) (also stating that "[p]reclusion should bar repetitive litigation by the association itself"); *see Taylor*, 553 U.S. at 895 ("[A] party bound by a judgment may not avoid its preclusive force by relitigating through a proxy.").[1]

[1] This clear rule governs here, not the unrelated principle at issue in the Coalition's cited authorities regarding whether a human being was acting in her own capacity or as a representative. *See* ECF 27 at 17.

### B. The Coalition's Claim Arises from the Same Nucleus of Operative Facts As in *Mate*.

The only real question, therefore, is whether the Coalition's claim in this case is sufficiently related to the claim that the Coalition dismissed with prejudice in *Mate*. To answer that question, this Court asks "whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectation." *SFFA*, 37 F.4th at 1088–89 (citation omitted). The answer is yes across the board. The same plaintiff (the Coalition) is again asserting that the same subsection of the same Louisiana concealed-carry permitting statute (La. R.S. 40:1379.3(C)) violates the same constitutional provision (the Second Amendment) because of the same alleged harms (18 U.S.C. § 922(q)'s school zones, the breadth of those zones, and the alleged loss of statutory civil immunities) cited in the same numbered complaint paragraphs (*Mate* Compl. ¶¶ 16–21; ECF 17, ¶¶ 16–21). So natural is packaging the *Mate* and *Pool* claims together as one unit that the Coalition threatened to sue Louisiana in 2025 if Louisiana did not adopt a legislative package resolving both issues together while *Mate* was pending. ECF 23-3 at 6–7.[2] The Coalition has no serious response.

1. Start with the Coalition's attempts to work around the Fifth Circuit's binding precedents. The Coalition claims that the geographic scope, origin, and motive of the residency-requirement challenge in *Mate* and the age-restriction challenge in *Pool* are different because "[t]he individual plaintiffs in *Mate* were nonresidents who were over the age of 21" (so not affected by the age restriction

[2] The Coalition surprisingly claims that "the Attorney General's office is distinct from—and does not control—the Louisiana Legislature," and thus its litigation threat was not a negotiating tactic. ECF 27 at 13. That is not what the Coalition is saying outside of its legal filings. Press Release, Firearms Policy Coalition, *FPC Asks Federal Court to Block Louisiana's Ban on Gun Carry Permits for 18-to-20-Year-Old Adults* (Sept. 1, 2026), t.ly/Qfvz0 (citing communications with the Attorney General's office and stating (a) "FPC warned Louisiana of the constitutional problem in 2025 and proposed a simple legislative fix—but the State refused," (b) "Louisiana had ample notice, a perfect solution, and two legislative sessions to act. They refused," and (c) "We told Louisiana about this constitutional problem and gave them a simple way to fix it in early 2025").

challenged in *Pool*) and "the Individual Plaintiffs here are all Louisiana residents" (so not affected by the residency-requirement challenge in *Mate*). ECF 27 at 12.

This is obfuscation: *The Coalition* was in both cases litigating on behalf of all its members nationwide *affected by both issues*. *See* ECF 17, ¶ 12 ("FPC's members reside both within and outside the State of Louisiana. FPC brings this action on behalf of those members who are between 18 and 20 years of age and who are legally eligible to possess and acquire firearms and who wish to apply for a Louisiana concealed handgun permit."); *Mate*, ECF 1, ¶ 11 ("FPC's members reside both within and outside the State of Louisiana. FPC brings this action on behalf of its members who are not Louisiana residents but who are legally eligible to possess and acquire firearms and who desire to would [sic] apply for a Louisiana carry license but for Defendants' enforcement of the laws at issue in this case."). In fact, as noted above, the Coalition is currently telling the Fifth Circuit that the same relief it secured for its 18-to-20-year-old Louisiana members should extend to its 18-to-20-year-old members *outside* of Louisiana.

There is thus no question about the overlap between *Mate* and *Pool*: The 18-to-20-year-old Coalition member outside of Louisiana was just as (allegedly) harmed by the residency requirement at issue in *Mate* as by the age restriction at issue in *Pool*.[3] And that defeats the Coalition's puzzling assertion that "the two claims do not form 'a convenient trial unit.'" ECF 27 at 12. Recall the Coalition's public representation otherwise: Resolving the two issues together pursuant to the Coalition's 2025 legislative proposal was "simple" and "perfect." *Supra* n.1.

The Coalition also strangely says that "the age-based claim in this case is not 'related in time' to the nonresident claim in *Mate*" because the Fifth Circuit did not issue its decision in *Reese v. ATF*,

---

[3] This illustrates the Coalition's misdirection in elsewhere claiming (ECF 27 at 11) that "[t]he removal of the nonresident provision [at issue in *Mate*] did nothing to vindicate the Second Amendment rights of 18-to-20-year-old Louisiana residents like the Individual Plaintiffs here." It *did* vindicate the asserted rights of the Coalition's 18-to-20-year-old members *outside* of Louisiana.

127 F.4th 583 (5th Cir. 2025), "until after *Mate* was filed" (and also "[t]wo of the Individual Plaintiffs were not even 18 during *Mate*"). ECF 27 at 12. Those facts are entirely irrelevant. The ages of the individual plaintiffs do not change the fact that the subject of preclusion here—the Coalition—undisputedly had members between 18 and 20 years old, including at least one Louisiana resident, while *Mate* was pending. And the preclusion problem here does not arise from the Fifth Circuit's decision in *Reese*. It arises from the Coalition's threat to sue over the age issue in this case while *Mate* was pending, its legislative proposal to resolve both the residency and age issues together, its pocketing of that issue, its dismissal of *Mate* with prejudice, and its filing of this suit a year later on behalf of the same class of 18-to-20-year-olds the Coalition has been representing in this District for "more than half a decade." Appellants' Br. at 5–6, 22–24, *Firearms Policy Coal., Inc.*, No. 26-30154 (5th Cir. June 22, 2026), ECF 34.

2. Because the Coalition clearly cannot satisfy the Fifth Circuit's governing preclusion standard, the Coalition rests almost entirely on a claim that *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016), saves the Coalition from preclusion. In particular, by the Coalition's telling, claim preclusion as understood by *Hellerstedt* does not bar separate challenges to "two separate [] laws enacted in the same statute." ECF 27 at 10. The Coalition badly overreads its cited *Hellerstedt* passage in two critical respects.

*First*, *Hellerstedt* adopted no categorical rule regarding separate challenges to provisions in the same statute. To the contrary, the cited passage adopted "all of [four] reasons" for declining to apply preclusion in that case: (a) "the relevant factual circumstances changed between" the first and second suits; (b) a Texas agency "had not [] issued" rules at the time of the first suit; (c) the petitioners "might well have expected those rules when issued" to have grandfather clauses in their favor; and (d) the two "separate, distinct provisions" at issue embodied "different, independent requirements with different enforcement dates" and "serve[d] two different functions." 579 U.S. at 605–06. The Coalition, of

course, cannot claim anything like (a), (b), and (c). (To the contrary, the nature of Louisiana's law is precisely the same as the Coalition "expected," *id.*, when it threatened to sue Louisiana before dismissing *Mate* with prejudice.) There is thus no basis in *Hellerstedt* for the Coalition's characterization of the case as categorically holding that "challenges to different statutory requirements represent different claims" for claim-preclusion purposes. ECF 27 at 10 (capitalization omitted).

*Second*, the "meaningful differences" between the two statutory provisions at issue in *Hellerstedt* plainly do not exist here. 579 U.S. at 604. The two provisions were located in entirely different Titles of the Texas Health and Safety Code. *See* Tex. Health & Safety Code § 245.010(a) (surgical-center requirement located in Title 4); *id.* § 171.0031(a) (admitting-privileges requirement located in Title 2). They were "separate, distinct provisions of" the enacting legislation itself. *Hellerstedt*, 579 U.S. at 604. They regulated different actors. *See* § 245.010(a) ("an abortion facility"); *id.* § 171.0031(a) (a "physician performing or inducing an abortion"). They imposed different standards for different conduct. *See* § 245.010(a) (standards for an abortion facility itself); *id.* § 171.0031(a) (requiring admitting privileges at a hospital within 30 miles of where an abortion is performed or induced). And they had "different enforcement dates" separated by a year. *Hellerstedt*, 579 U.S. at 604.

None of that is true here. As the Coalition does not dispute, the *Mate* residency challenge and the *Pool* age challenge arise from adjoining sentences in the same statutory subsection setting forth the "qualif[ications] for a concealed handgun permit." *See* La. R.S. 40:1379.3(C)(3) (now-repealed residency requirement), (4) (age requirement). They are contemporaneously enforceable against the same actor (an applicant) who wishes to apply for the same license (a concealed handgun permit) and thus must satisfy the same restrictions set forth in La. R.S. 40:1379.3(C). The Coalition believes them unconstitutional based on the same theories appearing in the same numbered complaint paragraphs. And the Coalition indeed attempted to resolve them together via one legislative proposal before dismissing its first suit with prejudice and filing its second suit a year later. *Hellerstedt* is irrelevant here.

Sensing as much, the Coalition protests that applying preclusion here would force associations like the Coalition to take a "kitchen-sink approach" to challenging statutes, which would be "absurd." ECF 27 at 11, 14–15 (citation and capitalization omitted). This is misdirection because this case falls nowhere near the outer bounds of claim preclusion: The Coalition threatened to file this suit then did not before dismissing *Mate* with prejudice, and the two suits arise from adjoining sentences in the same statutory subsection. Those facts alone render *Hellerstedt* completely irrelevant and obviate any need to consider other hypothetical cases. *See Hellerstedt*, 579 U.S. at 664 (Alito, J., dissenting) ("[T]hat is not the situation in this case. The two claims here are very closely related.").

3. With no law on its side, the Coalition resorts to rhetorical questions and innuendo suggesting that the State has not operated in good faith. ECF 27 at 5–9. That is incorrect. The State filed its Rule 5.1 notice on August 13, shortly after the July 22 complaint was filed, because, by rule, such a notice is "promptly" required. Fed. R. Civ. P. 5.1(a); *see* ECF 6. The State took no further action in this case because this Court granted a 60-day extension of the State's pleading deadline, ECF 8, and because both the Solicitor General and Principal Deputy Solicitor General were personally responsible for an overwhelming number of other matters during the same period.[4]

[4] For the Solicitor General, that included: an en banc petition filed on July 21 in *Murray v. LeBlanc*, No. 25-30076 (5th Cir.); a merits appellee brief filed on July 21, oral argument on August 5, a stay motion and en banc petition filed on August 26, and a reply filed on September 8 in *Plaquemines Parish v. Chevron USA Inc.*, No. 23-30336 (5th Cir.); a merits amicus brief filed on August 6 in *Guerrero v. Johnson*, No. 25-1003 (U.S.); a letter brief filed on August 31 in *Plaquemines Parish v. Exxon Mobil*, No. 24-30747 (5th Cir.); an en banc merits amicus brief filed on September 3 in *United States v. Squire*, No. 25-30324 (5th Cir.); oral argument on September 8 in *Louisiana v. FDA*, No. 26-30203 (5th Cir.); an emergency stay opposition brief filed on September 11 in *Parish of Cameron v. Devon Energy Prod. L.P.*, No. 26-30505 (5th Cir.); and the preparation and filing of two lawsuits on September 30, *Louisiana v. New York*, No. 22O165 (U.S.); *Louisiana v. Nouhavandi*, No. 26-cv-3836 (W.D. La.). For the Principal Deputy Solicitor General, that included: an emergency writ opposition filed on July 23 in *Fuller v. State*, No. 2026-CD-0927 (La.); exceptions hearing on July 31 in *State v. Roblox*, No. 188950 (21st JDC); oral argument on September 1 in *NetChoice v. Murrill*, No. 26-30016 (5th Cir.); preparation for a September 9 TRO hearing, ultimately continued, in *SEC v. LSU*, No. 2:26-cv-01586 (N.D. Ala.); a reply brief filed September 18 in *Cacho v. Louisiana*, No. 26-30101 (5th Cir.); and an appellee brief filed September 24 in *Do No Harm v. Landry*, No. 25-30568 (5th Cir.).

In an apparent attempt to override this Court's 60-day extension, the Coalition filed an amended complaint on August 27 and a preliminary-injunction motion 5 days after that (September 1). ECFs 17, 18. The Court immediately directed the parties to "confer and jointly file a proposed briefing schedule within 7 days." ECF 19. Notwithstanding serious internal time conflicts, *supra* n.4, the State then immediately conducted a thorough investigation of the case, culminating in its September 7 notice to the Coalition. The Coalition has no basis to speculate that the State has raised this clear preclusion problem in response to a press release or to delay this proceeding until the next legislative session. *See* ECF 23-1 at 4, 10 (citing that press release solely for its confirmation of the preclusion problem).

## II. THE COALITION'S FOCUS ON THE INDIVIDUAL PLAINTIFFS IS MISDIRECTION.

Finally, the foregoing disposes of the Coalition's repeated attempts to direct attention away from the Coalition and to the individual plaintiffs in this case. *See, e.g.*, ECF 27 at 1, 2, 5, 6, 11, 12, 16. As the Coalition knows, the State has raised preclusion solely against the Coalition and its improper attempt to "relitigat[e] through a proxy." *Taylor*, 553 U.S. at 895; *see* ECF 23-1 at 5–6. As the State recommends above, the proper disposition of this preclusion issue is to—with a cure period, if the Court deems appropriate—dismiss this suit with prejudice as to the Coalition and without prejudice to the individual plaintiffs filing their own suit, so long as those individuals are not the Coalition in disguise. *See* Wright & Miller, *supra*, § 4456 ("It seems clear enough that the association should not be able to evade preclusion continually by averring that unidentified members are not bound and bringing successive suits by claiming injury to different identified members.").

The preclusion problem is unmistakable as to the Coalition,[5] and this is an appropriate disposition that protects the Coalition's well-intentioned counsel from any adverse collateral consequences while holding the Coalition itself to account.

[5] For this reason, the Court should reject the Coalition's claim for fees. ECF 27 at 22–25.

Dated: October 27, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Zachary Faircloth*
ZACHARY FAIRCLOTH (LA 39875)
Principal Deputy Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 421-4088
Facsimile: (225) 326-6795
FairclothZ@ag.louisiana.gov

*Counsel for Defendant*